UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK
PLATTSBURGH DIVISION

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**

**Jan 07 - 2024**

John M. Domurad, Clerk

| | |
|---|---|
| **SCOTT PHILLIP LEWIS,** *Plaintiff*, | § § § |
| v. | §   Jury Trial Demanded § |
| **Adirondack Medical Center d/b/a Adirondack Health** *Defendant.* | §   8:24-cv-27 (BKS/DJS) § § § |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES PLAINTIFF, Scott Phillip Lewis, and files Plaintiff's Original Complaint. Plaintiff files this Americans with Disabilities Act and Rehabilitation Act lawsuit for cause of action will show the following:

### I.   PARTIES

1. Plaintiff is Scott Phillip Lewis ("Plaintiff"), an individual and citizen of the United States of America.

2. Defendant is Adirondack Medical Center, doing business as Adirondack Health ("Adirondack Health") ("Defendant"), a 501(c) not-for-profit organization located at 2233 NY-86, Saranac Lake, NY and can be served through it's Chief Executive Officer Aaron Kramer or any other agent authorized by appointment or by law to receive service of process pursuant to Fed. R. Civ. P. 4(h)(1)(B). Service is requested contemporaneously with the filing of the complaint.

### II. JURISDICTION AND VENUE

3. The court has jurisdiction over this lawsuit according to 28 U.S.C § 1331. The court has personal jurisdiction because the American with Disabilities Act of 1990 and Rehabilitation

Act of 1973 are laws of the United States.

4. Venue is proper in the Plattsburgh Division of the United States District Court for the Northern District of New York, under 28 U.S.C § 1391(b). Adirondack Health is situated in this district and a substantial part of the events or omissions giving rise to claims in this lawsuit occurred within this judicial district.

### III. FACTUAL ALLEGATIONS

#### A. Background of Plaintiff's Medical History

5. Plaintiff's relationship with chronic pain begins in 2012. At this time, Plaintiff had their left wrist severely broken, requiring a fixation with screws and plates used to piece the arm back together. Surgery was performed at Upstate Orthopedics in East Syracuse, New York. After surgery, Plaintiff was prescribed Oxycontin, a pain killer known for its high risk for addiction and dependence. Oxycontin was originally advertised as not being addictive by distributors such as Purdue Pharmaceuticals located in Stamford, Connecticut.

6. The Johns Hopkins Medicine website explains "[w]hen pain becomes such a problem that it interferes with your life's work and normal activities, you may become the victim of a vicious circle. Pain may cause you to become preoccupied with the pain, depressed, and irritable. Depression and irritability often leads to insomnia and weariness, leading to more irritability, depression, and pain."
https://www.hopkinsmedicine.org/health/conditions-and-diseases/chronic-pain#:~:text=Pain%20may%20cause%20you%20to,suffering%2C%20sleeplessness%2C%20a nd%20sadness).

7. By 2013, Plaintiff had noticed changes in life's work and normal activities because of the constant chronic pain in the left wrist. By May 2014, Plaintiff made the choice to remain

abstinent from alcoholic beverages as the chronic pain mixed with alcohol had become an unpleasant experience with irritable behavior becoming more frequent. Shortly after making this choice, Plaintiff was hired as a Derivatives Trading Specialist at optionsXpress by Charles Schwab and JV Lacrosse Coach at Vandegrift High School in Austin, TX. Plaintiff moved from Syracuse, New York.

8. In November 2015, Plaintiff was involved in a hit and run accident on Rainey Street in Austin, Texas leaving Plaintiff with a concussion and traumatic brain injury (TBI). The police who were involved never followed up with Plaintiff, seemingly attempting to cover up what happened. Plaintiff is still working on obtaining a full police report and information from the officers involved at the November 2015 accident and cover up.

9. After the 2015 hit and run incident, Plaintiff experienced a progressive increase in attention-deficit/hyperactivity disorder ("ADHD") symptoms associated with the post-traumatic stress disorder ("PTSD") from the accident and lack of police professionalism, follow up and transparency.

10. After the progression of symptoms of PTSD and ADHD from the 2015 hit and run accident, Plaintiff had developed an alcohol abuse disorder over time. While some could see the alcohol abuse, the root cause of the symptom went undiagnosed for a very long time. Even though Plaintiff understood the symptoms he was experiencing, Plaintiff was bombarded with conflicting opinions by individuals who did not care about the full truth, but instead focused on selective facts that best fit a desired narrative and bias.

11. Again symptoms of PTSD and ADHD were further exacerbated on or around July 2018 when a former roommate and also a coach at Vandegrift Lacrosse Club told Plaintiff he had paid money to have a man killed over a disagreement in a lacrosse game. Stunned by such

evil, Plaintiff experienced an even further increase in ADHD and PTSD symptoms and separately, an increase in alcohol abuse, which is a symptom of PTSD and ADHD.

12. Plaintiff made the choice to go to "A Forever Recovery," a rehabilitation facility in Battle Creek, Michigan. Plaintiff knew this was not a good fit, almost immediately, as the facility wanted to focus solely on the alcohol abuse and not the reasons that caused such a symptom. Plaintiff felt as if they were at a cult and made the decision to leave after approximately twelve (12) days. This experience affected Plaintiff's overall well-being.  "A Forever Recovery" is now believed to be permanently closed.

13. As previously mentioned on January 25, 2019, Plaintiff was arrested for driving while intoxicated in Williamson County, TX and had his left shoulder broken within the Williamson County Jail.

14. The criminal charges associated with Plaintiff's driving while intoxicated arrest were dismissed for insufficient evidence on or around April 25, 2022.  The civil lawsuit initiated by Plaintiff against Williamson County, Texas is an active case in the United States District Court for the Western District of Texas.  The active litigation's case number in the Western District of Texas is 1:21-cv-00074.

15. Plaintiff was diagnosed with ADHD on or around January 10, 2022.

16. Plaintiff was diagnosed with PTSD on or around May 3, 2023 (Exhibit A) but had displayed symptoms for many years prior.

### B. Plaintiff's History with Adirondack Health

17. Plaintiff's first visits to Adirondack Health occurred in 2008 and 2009 while Plaintiff attended National Sports Academy, a preparatory school in Lake Placid, NY.

18. Plaintiff returned to Adirondack Health on or around February 2022 to seek primary care and

treatment for left wrist/hand/fingers and left shoulder injuries.

19. Plaintiff was referred to receive two separate evaluations, one for the left wrist/hand/fingers and one for the left shoulder, for potential imaging and physical therapy.

20. Plaintiff was seen by therapist Crystal Richards, PT, DPT, on or around February 28, 2022. The assessment concluded symptoms were consistent with shoulder impingement or a labral tear (Exhibit B)

21. Plaintiff was seen by treating therapist Carolyn Walrath, MS, OTR/L, CHT on or around March 9, 2022 for an evaluation of the left wrist (Exhibit C)

22. Before beginning treatment or imaging, Plaintiff had traveled to Austin, Texas twice for court proceedings associated with the January 25, 2019 driving while intoxicated arrest and incarceration that left Plaintiff injured. First, Plaintiff traveled to Austin, Texas on or around March 13, 2022 to attend a pre-trial conference from the January 25, 2019 "LivePD" arrest. Second, Plaintiff traveled to Austin, Texas for the trial of the January 25, 2019 "LivePD" arrest. The charges were dismissed mid-trial by the State of Texas for insufficient evidence on or around April 26, 2022.

23. On or around April 27, 2022, therapist Crystal Richards discharged Plaintiff without notifying the patient (Exhibit D).

24. When returning to Adirondack Health within the next month, Plaintiff was told by staff Bonnie Brownell that new referrals and evaluations were required to begin physical therapy. Bonnie Brownell was unable to show any organization policy that required such a burden on Plaintiff, physically, emotionally and financially.

25. Plaintiff was seeking relief for pain and was told to jump through more hurdles.

26. On or around November 8, 2022, Plaintiff received an initial evaluation for what was

believed to be physical therapy on the surgically repaired and deformed left wrist, hand and fingers by Molly Breen, OTR/L.

27. Molly Breen was an occupational therapist and not licensed in physical therapy, the type of care Plaintiff was seeking.  Upon information and belief, Ms. Breen is not licensed to perform the duties of a physical therapist.

28. From November 2022 to December 2022, Plaintiff received approximately twelve sessions on a severe injury to the left wrist, hand and fingers that was causing chronic pain from an individual who is not licensed to perform physical therapy.

29. On or around November 14, 2022, Plaintiff received an initial evaluation for physical therapy on the left shoulder by Stacy Herron, DPT.  Stacy Herron's evaluation includes an onset date of November 4, 2022 (Exhibit E).  This is flatly inaccurate.  Plaintiff's shoulder injury began on January 25, 2019 after it was broken in the Williamson County, Texas Jail.

30. Plaintiff received what was believed to be physical therapy from an individual named Sara Kriwok on the left shoulder from November 2022 to December 2022.  Upon information and belief, Sara Kriwok is not a licensed physical therapist (Exhibit F).  Plaintiff received session on a severe injury to the left shoulder that was causing chronic pain from an individual who is not licensed to perform physical therapy.

31. After the completion of treatment, Plaintiff's injuries remained.

32. Plaintiff voiced his disapproval of not taking imaging before beginning physical therapy.  Plaintiff feared the treatment he had received had caused further damage.  Plaintiff's injuries and pain remained.

33. On or around February 2023, Plaintiff visited with Matt Powers, Director of Rehabilitation and Sports Medicine, and two other individuals presumed to be employees of Adirondack

Health at 2233 NY-86, Saranac Lake, New York to discuss the improper treatment and obstacles Plaintiff encountered to receive such improper care.  The meeting occurred before Plaintiff realized he had not received physical therapy from a licensed individual when meeting with Molly Breen and Sara Kriwok.

34. After the meeting with Matt Powers and other unnamed individuals where Plaintiff voiced his complaints and was promised recourse, Plaintiff received referrals for MRIs on the left hand, wrist, and fingers and left shoulder on or around April 2023.  When arriving for the MRI on the left wrist, hand and fingers or or around April 2023, Plaintiff was told the MRI was only authorized by the insurance company to be done on the left forearm and not include the injured hand and fingers.

35. Much to Plaintiff's dismay, the MRI was performed on the left forearm only.

36. Plaintiff had to return for a second MRI after the previous image on the forearm did not clearly show the injuries to the left wrist, hand and fingers, which was exactly Plaintiff's opposition to the first MRI..

37. Plaintiff's third MRI was performed on or around April 24, 2022 on the left shoulder.

38. Plaintiff's original diagnosis was a fracture of the left humerus by Austin Sports Medicine on or around February 2019 (Exhibit G).

39. On or around April 24, 2022 the findings include a torn/degenerated superior labrum.  Plaintiff has yet to see any of these images (Exhibit H)

40. Plaintiff's requests to review the images have gone unanswered by Adirondack Health.

## IV. CLAIMS

### Claim I - Violation of Title III, Americans with Disabilities Act of 1990

41. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

42. "To state a claim under Title III [of the Americans with Disabilities Act ("ADA" or "the Act")], [a plaintiff] must allege (1) that he is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

43. Title III of the Americans with Disabilities Act of 1990 ("ADA") prohibits discrimination on the basis of disability in the activities of places of public accommodations and is codified through 42 U.S.C § 12182(a) which states in full:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

44. Plaintiff has been diagnosed with ADHD and PTSD, qualifying as disabled under the ADA.

45. Adirondack Health owns or operates a public not-for-profit organization including but not limited to Saranac Lake Health Center, Keene Health Center, Lake Placid Health and Fitness Center and are of public accommodation.

46. Instead of receiving proper treatment, Plaintiff's disability was used to take advantage of Plaintiff financially while Defendant denied treatment or full and equal opportunity to enjoy the services provided in receiving treatment on the left wrist, hand and fingers and left shoulder.

47. Instead of beginning treatment in April 2022 after an initial evaluation on or around March 2022, Plaintiff was tasked with starting the entire process over.  Thus, treatment did not begin until November 2022 by individuals not licensed to perform physical therapy.

48. Defendant did not make proper accommodations to meet Plaintiff's disability.  Instead, Defendant through Bonnie Brownell stated an organization policy that is not outlined in any company policy.

49. Simply put, Defendant was told to start the referral and evaluation process over because doing so would be the most financially beneficially route for Defendant, while denying the treatment Plaintiff needed.

50. Defendant took advantage of Plaintiff's disabilities and did not make reasonable accommodations.

51. Thus, Plaintiff was injured due to Defendant's ADA violation.  Plaintiff suffered the injuries of worsening health of the injured left wrist, hand and fingers and left shoulder.  The injuries were not treated as Plaintiff was denied proper services.  The pre-existing injuries were further injured by Defendant's violations.

52. Plaintiff seeked physical therapy but did not end up receiving physical therapy for his left, wrist, or hand.

53. By denying Plaintiff treatment, not only were physical injuries encountered but Plaintiff suffered mental injuries.  Plaintiff suffered emotional distress and worsening symptoms of ADHD and PTSD due to Defendant's ADA violations.

54. The pain associated in the left wrist, hand and fingers and left shoulder contributes to Plaintiff's symptoms of ADHD..

55. The pain associated in the left wrist, hand and fingers and left shoulder contributes to Plaintiff's symptoms of PTSD.

56. Plaintiff requests all relief and damages he may be entitled.

### Claim II - Violation of Section 504 of the Rehabilitation Act

57. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

58. Upon information and belief, Adirondack Medical Center received Federal financial assistance in 2022, in the amounts of $535,027.

59. Under Section 504 of the Rehabilitation Act, individuals with disabilities are defined as persons with a physical or mental impairment which substantially limits one or more major life activities. A recipient of Federal financial assistance may not, on the basis of disability, deny qualified individuals the opportunity to participate in or benefit from federally funded programs, services, or other benefits or deny access to programs, services, benefits or opportunities to participate as a result of physical barriers (https://www.hhs.gov/sites/default/files/ocr/civilrights/resources/factsheets/504.pdf).

60. ADHD and PTSD are disabilities that create mental impairments that substantially limit one or more life activities.

61. Plaintiff exhibited the inability to care for oneself, work consistently, perform manual tasks, focus and learn.

62. The pain associated in the left wrist, hand and fingers and left shoulder contributes to Plaintiff's symptoms of ADHD

63. The pain associated in the left wrist, hand and fingers and left shoulder contributes to Plaintiff's symptoms of PTSD.

64. Plaintiff was denied access to programs, services, benefits or opportunities as a result of a discrimination due to disability.

65. Instead, Defendant used Plaintiff's disability to make decisions that were financially beneficial to Defendant while denying proper care that Plaintiff seeked.

66. Plaintiff requests all relief and damages he may be entitled.

## V. DAMAGES

67. Plaintiff suffered and claims the following damages::

    I. Actual Damages

    - Past and future mental anguish
    - Past and future impairment
    - Past and future medical expenses
    - Past and future loss of earning capacity
    - Past and future physical suffering

## VI. JURY DEMAND

68. Plaintiff respectfully requests jury trial pursuant to FED. R. CIV. P. 48.

## VII. PRAYER FOR RELIEF

69. Accordingly, Plaintiff requests that judgment be awarded against Adirondack Health for:

(1) Compensatory damages;
(2) Punitive or exemplary damages;
(3) Costs of Court;
(4) Prejudgment and postjudgment interest at the highest rate allowable under law;
(5) Unliquidated damages at the highest amount that is within the jurisdictional limits of the court;
(6) And all over relief to which Plaintiff is justly entitled.

Respectfully submitted,
/s/Scott Phillip Lewis
Scott Phillip Lewis
1936 Saranac Ave. #3, PMB 411
Lake Placid, NY 12946
518-551-3061
scottphilliplewis@gmail.com
