**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SCOTT PHILLIP LEWIS,

                                    Plaintiff,

          - v -                                    Civ. No. 8:24-CV-27
                                                      (BKS/DJS)

ADIRONDACK MEDICAL CENTER,

                                    Defendant.


**APPEARANCES:**                    **OF COUNSEL:**

SCOTT PHILLIP LEWIS
Plaintiff *Pro Se*
Lake Placid, New York 12946

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

The Clerk has sent the undersigned Plaintiff's civil Complaint for review pursuant to 28 U.S.C. § 1915(e).  Dkt. No. 1, Compl.  Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP").  Dkt. No. 2, IFP App.  The Complaint alleges violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  Compl. at ¶¶ 41-65.

---

[1] This matter was referred to the undersigned pursuant to L.R. 72.3(d).

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.* In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

The Complaint alleges that in February 2022 Plaintiff went to Defendant's facility seeking treatment for wrist, hand, finger, and shoulder injuries. Compl. at ¶ 18. He was referred for and received an evaluation that month. *Id.* at ¶ 20. At that time he was recommended for physical therapy. Dkt. No. 2 at p. 4. He was further evaluated in March 2022, Compl. at ¶ 21, and recommended for occupational therapy. Dkt. No. 2 at

p. 10.  Plaintiff was then out of state for a period of time, Compl. at ¶ 22, and medical records indicate that he did not schedule follow-up appointments.  Dkt. No. 2 at p. 13. Plaintiff again sought treatment in November 2022.  Compl. at ¶ 26.  He then received treatment during November and December 2022, though he alleges he was provided care by someone not properly licensed.  *Id.* at ¶¶ 27-30.

### C. Analysis of the Complaint

The gravamen of Plaintiff's claims under both the ADA and Rehabilitation Act is Defendant's purported failure to timely provide physical therapy services.  Compl. at ¶¶ 47& 64-65.[2]  Plaintiff alleges that this action was financially motivated.  *Id.* at ¶¶ 49 & 65.

Neither the ADA nor the Rehabilitation Act provide a cause of action for medical malpractice.[3]  *Durr v. Slator*, 558 F. Supp. 3d 1, 30 (N.D.N.Y. 2021) (ADA); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 232 (2d Cir. 2014) (Rehabilitation Act).  The Second Circuit has recognized that "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if []he alleges that the defendant[] made treatment decisions based on factors that are unrelated to, and

---

[2] There is no claim that he was denied service outright.

[3] The allegations that he was treated by an individual without the proper knowledge or licensure is one for malpractice that is not actionable under either statute.  See *Williams v. Ferrari*, 2018 WL 1179603, at *7 (N.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, 2018 WL 1183385 (N.D.N.Y. Mar. 6, 2018).

thus improper to consideration of the inquiry in question." *McGugan v. Aldana-Bernier*, 752 F.3d at 234 (internal quotations omitted).

Plaintiff's conclusory allegation that Defendant forced Plaintiff to undergo the intake procedure a second time for financial reasons in insufficient to state a claim at this point. "[A] claim under the ADA or the Rehabilitation Act is actionable only where a plaintiff can show that []he was discriminated against based on h[is] disability." *Andersen v. N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, 2015 WL 1443254, at *17 (E.D.N.Y. Mar. 26, 2015). Plaintiff offers nothing to suggest a connection between the purported financial motivation and his disability. Moreover, the medical records attached to the Complaint belie Plaintiff's claims since they suggest that medical providers at Adirondack Health found that Plaintiff would "benefit from physical therapy intervention." Dkt. No. 2 at p. 4. Providers established preliminary treatment goals and established next steps in the treatment plan. *Id.* at pp. 4-5. If Defendant were motivated solely by financial gain, delaying treatment would not seem to serve that goal. In fact, the records suggest that it was Plaintiff's own lack of follow through that resulted in a delay in his treatment. *Id.* at p. 13 (noting that Plaintiff had not attempted to schedule appointments following consultation). For these reasons, Plaintiff has failed to allege discrimination in treatment sufficient to pursue either claim at this time because he has pled no nexus between the disabilities alleged and the purported delay in service.

Plaintiff's ADA claims also must be dismissed at this juncture since he seeks only monetary damages, and a Title III ADA claim does not permit recovery of compensatory damages, only injunctive relief. *Hejmej v. Peconic Bay Med. Ctr.*, 2022 WL 5429675, at *7 (E.D.N.Y. July 5, 2022).

"[A] court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Each of the deficiencies identified above could potentially be rectified by more detailed pleading and so the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend. Plaintiff is advised that any such amended complaint shall supersede and replace in its entirety the previous Complaint filed by Plaintiff. If this recommendation is accepted and Plaintiff is permitted to amend his Complaint, Plaintiff is further warned that the failure to submit an amended complaint could result in dismissal of this action.

## II. ACCESSIBILITY OF MEDICAL RECORDS

Plaintiff has also filed a Motion seeking to direct the Clerk to make medical records filed with the Complaint publicly accessible. Dkt. No. 5. Pursuant to General Order 22 of the Northern District medical records in any case are filed on the Court's

docket in a manner that restricts public access. General Order 22, § 11.4.[4] This is a generally applicable rule for all cases. Plaintiff's stated desire to have his medical records more readily available is not a basis for departing from this Court's standard practice.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that Plaintiff's Motion regarding medical records (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

---

[4] The Clerk is directed to provide a copy of the General Order to Plaintiff upon serving this Order.

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   February 29, 2024
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 9 of 64

2018 WL 1179603
Only the Westlaw citation
is currently available.
United States District Court, N.D. New York.

Rodney WILLIAMS, Plaintiff,
v.
Casimo FERRARI, Physician, Bare
Hill Correctional Facility formerly
known as Farrari Casimo, Defendant.

Civ. No. 9:15-CV-0988 (GTS/DJS)
|
Signed 02/05/2018

**Attorneys and Law Firms**

RODNEY WILLIAMS, Plaintiff, 10-A-3938,
Gouverneur Correctional Facility, 112 Scotch
Settlement Road, P.O. Box 370, Gouverneur,
New York 13642-0370, Pro Se.

HON. ERIC T. SCHNEIDERMAN, Attorney
General of the State of New York, OF
COUNSEL: DENISE P. BUCKLEY, ESQ.,
Assistant Attorney General, The Capitol,
Albany, New York 12224, Attorney for
Defendant.

**REPORT-RECOMMENDATION
and ORDER**

Daniel J. Stewart, U.S. Magistrate Judge

**\*1** *Pro se* Plaintiff Rodney Williams brings
this civil rights action, pursuant to 42
U.S.C. § 1983, alleging that Defendant was
deliberately indifferent to his serious medical
needs in violation of the Eighth Amendment.
Dkt. No. 69, Am. Compl. On March 2,
2017, Defendant filed a Motion for Summary
Judgment, pursuant to Federal Rule of Civil
Procedure 56(a). Dkt. No. 106. Plaintiff
opposed the Motion and Defendant filed a
Reply. Dkt. Nos. 113 & 118. For the reasons
that follow, the Court recommends **granting**
Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

Except where otherwise noted, the following
material facts are undisputed. [1] The relevant
events arise from Plaintiff's claim that
Defendant denied him adequate medical
treatment for his shoulder pain while he
was housed at Bare Hill Correctional Facility
("Bare Hill C.F.") in the custody of the
New York Department of Corrections and
Community Supervision ("DOCCS").

From September 2010 until September 2016,
Plaintiff was incarcerated at Bare Hill C.F. Dkt.
No. 106-18, Buckley Decl., pp. 3-4. Defendant
was employed as a Clinical Physician II at Bare
Hill C.F. and was responsible for overseeing
Plaintiff's medical care until he retired in
October 2015. Dkt. No. 106-19, Ferrari Decl,
¶ 3. One month prior to arriving at Bare Hill
C.F., Plaintiff underwent a Health Screen at
Downstate C.F. Dkt. No. 107, Pl.'s Med. Rec.,
pp. 36-37. [2] The nurse noted that Plaintiff
complained of arthritis in both shoulders.
*Id.* When Plaintiff arrived at Bare Hill C.F.,
Plaintiff complained of shoulder pain. Pl.'s
Med. Rec., p. 33.

From September 2010 until March 2012,
Plaintiff received treatment from the medical

staff at Bare Hill C.F. for various complaints including foot pain, vision problems, nasal congestion, and for injuries sustained in an altercation with another inmate. Pl.'s Med. Rec., pp. 339-347. On September 8, 2010, Plaintiff complained of nasal congestion and requested eyeglasses, over-the-counter lotion, and a bottom bunk. Pl.'s Med. Rec., p. 347. Regarding the bottom bunk, the Ambulatory Health Record ("AHR") indicates, "no criteria noted in chart." *Id.*

**\*2** On March 8, 2012, Plaintiff attended sick call complaining of "continuous serious pain in his right shoulder, upper arm, and muscle." Am. Compl., ¶ 8. Plaintiff also requested a permit for a bottom bunk. Pl.'s Med. Rec., pp. 339. Defendant reviewed Plaintiff's medical records and concluded that the criteria for such a permit were not met. Ferrari Decl., ¶ 11.

On June 15, 2012, Plaintiff met with Defendant for the first time and complained of pain in his left hip and right shoulder with "clicking and popping." Pl.'s Med. Rec., p. 337. Defendant ordered x-rays of Plaintiff's right shoulder and left hip. *Id.* Plaintiff also received a prescription for Voltaren, a nonsteroidal anti-inflammatory medication. *Id.* The referral for x-rays was submitted on June 18, 2012 and completed on July 27, 2012. Pl.'s Med. Rec., p. 14. The radiologist noted, "mild osteoarthritis at the glenohumeral joint and moderate osteoarthritis at the AC joint." *Id.* at p. 92. On August 20, 2012, Defendant signed the report. *Id.* This report was consistent with Defendant's view that Plaintiff was suffering from arthritis. Ferrari Decl., ¶ 15.

On March 18, 2013, Plaintiff met with Defendant for the second time. Pl.'s Med. Rec., p. 328. The AHR does not contain any notations related to shoulder pain but indicates that Defendant prescribed Voltaren and referred Plaintiff for an orthopedic consult for Plaintiff's complaints related to foot pain. *Id.* Defendant also requested "special issue boots." Pl.'s Med. Rec., pp. 403-04.

On July 15, 2013, Plaintiff met with Defendant for the third time. Pl.'s Med. Rec., p. 326. The AHR indicates that Plaintiff made complaints related to eczema and pain with a decreased range of motion in the right shoulder. *Id.* Defendant ordered a second set of x-rays and prescribed Vitamin D lotion. *Id.* The referral for x-rays was submitted on July 16, 2013 and completed on August 27, 2013. [3] Pl.'s Med. Rec., p. 14. The radiologist noted, "[t]here is mild to moderate osteoarthritis at the glenohumeral joint with subchondral cystic change at the greater tuberosity as well as osteophyte formation at the inferior aspect of the glenohumeral joint. Moderate osteoarthritix is present at the AC joint with small inferiorly pointing spurs. No abnormal soft tissue calcification in present." *Id.* at p. 161. Defendant reviewed the report. Ferrari Decl., ¶ 25.

On September 24, 2013, Plaintiff met with Defendant. Pl.'s Med. Rec., p. 322. The AHR does not contain any notations related to shoulder pain. *Id.* Plaintiff complained of left wrist pain extending from his arm to his thumb. *Id.* Defendant ordered an electromyogram ("EMG"). *Id.* The referral for the EMG was submitted on September 24, 2013 and completed on October 29, 2013. Pl.'s Med.

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 11 of 64

Rec., p. 14. The technician advised Plaintiff that "his nerves were normal." Am. Compl., ¶ 17.

On July 10, 2014, Plaintiff met with Defendant for the fifth time. Pl.'s Med. Rec., p. 316. The AHR indicates that Plaintiff complained of right shoulder pain and trouble hearing. *Id.* Defendant ordered a consult with an audiologist and prescribed Mobic. Pl.'s Med. Rec., pp. 316 & 393. In August 2014, October 2014, and November 2014, Defendant referred Plaintiff for follow up consultations with an audiologist. Pl.'s Med. Rec., pp. 388, 389, & 391. As a result of the consultations, Plaintiff received bi-lateral hearing aids. *Id.* O n September 9, 2014, Defendant examined a 4x5 cm mass on Plaintiff's left anterior shoulder. Pl.'s Med. Rec., p. 315. Plaintiff claimed that the mass had increased in size over the previous two months and caused him pain. *Id.* The AHR lacks any notations related to Plaintiff's right shoulder during this period. *Id.* The record does not indicate that Plaintiff requested an MRI, CAT scan, or orthopedic consult. *Id.* Defendant recommended a surgical consult and excision of the mass. Pl.'s Med. Rec., pp. 311 & 390. The referral was submitted on October 22, 2014 and the biopsy was completed on December 3, 2014. Pl.'s Med. Rec., p. 13. Defendant reviewed the pathology report on December 26, 2014. Pl.'s Med. Rec., p. 78. Following the surgery, Defendant prescribed Tylenol with Codeine #3. Pl.'s Med. Rec., p. 308. Plaintiff was subsequently caught "cheeking" his medication and was transferred to the Special Housing Unit ("SHU"). Pl.'s Med. Rec., p. 307. Defendant discontinued the prescription for Tylenol and prescribed Motrin, 800 mg. *Id.*

**\*3** On January 7, 2015, Plaintiff filed a grievance asking for an "arthritis specialist," MRI and/or CAT scans, and for a different physician. Dkt. No. 106-7, Buckley Decl., Ex. B at p. 5. On January 19, 2015, Plaintiff was seen by Dr. Brian Connolly, who referred Plaintiff for an MRI of his right shoulder. Pl.'s Med. Rec., p. 72. On February 9, 2015, the MRI was performed at Alice Hyde Medical Center. Pl.'s Med. Rec., p. 12. The radiologist noted a "large full thickness tear of the supra and infraspinatus tendons with marked retraction present. Small partial tear of the subscapularis tendon with associated medical sublaxtion of the long head of the biceps tenon suggesting disruption of the biceps pulley/mechanism. Atrophy of the muscle belies of the supra and infraspinatus." Pl.'s Med. Rec., p. 88. On May 5, 2015, Plaintiff had surgery on his right shoulder. Pl.'s Med. Rec., pp. 65 & 193.

After surgery, Plaintiff met with Defendant on two occasions. Pl.'s Med. Rec., pp. 62 & 64. The records indicated that Plaintiff's wound was healing well. *Id.* Defendant prescribed Naproxen, 500 mg. *Id.* Upon Plaintiff's request, a few days later, Defendant provided a prescription for Mobic instead of Naproxen. Pl.'s Med. Rec., p. 61.

On October 31, 2015, Defendant retired and Plaintiff had no further interaction with Defendant. Ferrari Decl., ¶ 51.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

**\*4** Defendants seek summary judgment on three grounds: (1) there are no disputed issues of material fact precluding summary judgment on Plaintiff's deliberate medical indifference claims; (2) Defendant is entitled to qualified immunity; and (3) Plaintiff's state law claims are barred by N.Y. Correction Law § 24.[4] Dkt. No. 106. In support, Defendant has submitted his own Declaration. Dkt. No. 106-19.

## A. EIGHTH AMENDMENT

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (*quoting* *Estelle*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer*, 511 U.S. at 834 (*quoting* *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316

F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (*quoting* *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone'." *Id.* (*quoting* *Smith*, 316 F.3d at 185).

**\*5** The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer*, 511 U.S. at 836. This requires "something more than mere negligence ... [but]

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 14 of 64

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. Objective Prong

"[C]hronic pain can be a serious medical condition." *Price v. Reilly*, 697 F. Supp. 2d 344, 363 (E.D.N.Y. 2010) (citing *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)). Courts have found allegations of "severe pain" and "reduced mobility" in the shoulder sufficient to raise issues of fact as to whether a "shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard." *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006). Here, the record before the Court establishes that Plaintiff was repeatedly treated at sick call for complaints of right shoulder pain. Pl.'s Med. Rec., pp. 67, 68, 316, 326, 330, 332, & 337. He also underwent x-rays, an MRI, was treated with medication and ultimately underwent surgery. Pl.'s Med. Rec., pp. 60, 88, 92, 95, 102, & 140-46. At the very least this raises a question of fact as to whether Plaintiff's shoulder injury was "sufficiently serious" to satisfy the objective prong. *See Mercer v. APS Healthcare, Inc.*, 2015 WL 5692563, at *9 (N.D.N.Y. Sept. 28, 2015) (treatment involving x-ray of shoulder joint and medication established that his shoulder pain is an objectively serious medical condition for purposes of the Eighth Amendment); *Price v. Reilly*, 697 F.Supp.2d 344, 363 (E.D.N.Y. 2010) (plaintiff's allegations of chronic pain as a result of a separated shoulder were sufficiently serious to meet the objective component of his deliberate indifference claim).

### 2. Subjective Prong

Plaintiff must also show that Defendant acted with a mental state akin to criminal recklessness. *See Farmer*, 511 U.S. at 836-37. Liberally construed, Plaintiff alleges that Defendant deprived him of constitutionally adequate medical care, failed to order particular tests, refused to provide a bottom bunk pass or medical excuse, and delayed his treatment. *See* Dkt. No. 113. Taken together, these claims fall into two broad categories—an alleged failure to provide essential care and a disagreement with the particular care that was provided to Plaintiff by Defendant

### a. Alleged Failure to Provide Care

Plaintiff contends that Defendant did not treat him in a timely fashion and, as a result, surgery

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 15 of 64

was delayed and unsuccessful. *See* Pl.'s Mem. of Law, p. 4. "Cruel and unusual punishment may consist of prison officials delaying an inmate['s] access to needed medical care." *Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991). In order to rise to the level of deliberate indifference, the defendant must have known of and disregard an excessive risk to the inmate's health or safety. *Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." *Amaker v. Coombe*, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002)(citing cases).

**\*6** While Plaintiff claims that he was denied treatment, the record establishes otherwise. Between June 2012 and May 2015, Plaintiff was seen or treated by medical staff, at least one hundred times, for complaints of shoulder pain, hearing loss, foot pain, a mass on his left shoulder, and wrist pain. *See* Pl.'s Med. Rec., pp. 304-37. Throughout that three year time period, Plaintiff made nine documented complaints of "right shoulder pain" and a decreased range of motion in his right shoulder. Pl.'s Med. Rec., pp. 67, 68, 316, 326, 330, 332. Plaintiff's complaints were addressed with medication and x-rays. *See id.* Defendant personally saw Plaintiff in the facility infirmary on numerous occasions. Ferrari Decl. at ¶¶ 12, 17, & 20. During those appointments, Defendant assessed Plaintiff's shoulder and range of motion, ordered multiple x-rays and prescribed several different anti-inflammatory and pain medications. Ferrari Decl., ¶¶ 12, 14, 15, 18, 21, 48, & 49. With regard to the claim that Defendant failed to order additional diagnostic tests or a referral to a orthopedic specialist, Defendant states that there was nothing in Plaintiff's medical history, test results, or other available information that suggest such action was necessary. *Id.* at ¶¶ 19, 22, 32, & 33.

Taken together this record establishes that, contrary to Plaintiff's claims, Defendant did provide treatment for Plaintiff's right shoulder. This treatment, while evidently not Plaintiff's preferred course of treatment, belies a claim for deliberate indifference. *Gay v. Terrell*, 2013 WL 5437045, at *23 (E.D.N.Y. Sept. 27, 2013). Plaintiff's medical records indicate that the pain in plaintiff's shoulder was a long-term persistent problem having first been reported in the records upon Plaintiff's receipt into DOCCS custody in August 2010. Pl.'s Med. Rec., p. 36 (noting shoulder pain similar to arthritic condition diagnosed by Defendant).[5] Given this and the nature and course of Plaintiff's treatment the record establishes that Plaintiff's condition was not "life threatening." Nor does Plaintiff even make such an allegation. Accordingly, no reasonable factfinder could conclude that there

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 16 of 64

was any delay in Plaintiff's course of treatment that resulted from Defendant's deliberate indifference to Plaintiff's medical needs. *See Amaker v. Coombe*, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002); *see also Williamson v. Goord*, 2006 WL 1977438, at *21 (N.D.N.Y. July 21, 2006) ("[E]ven if Plaintiff's allegations are true that, [...] Defendants delayed in seeing Plaintiff, failed to provide an MRI for Plaintiff, and failed to refer Plaintiff to an orthopedic specialist [...], those failures did not threaten to produce death or degeneration, or produce extreme pain.").

### b. Disagreement Regarding Care Provided

As to this category of claims, Plaintiff alleges that while he met with Defendant several times over the course of three years, Defendant continually provided the "same treatment" and failed to refer him to a specialist. Pl.'s Decl., p. 2. Plaintiff also asserts that Defendant was "disrespectful" and made him feel "indifferent." Pl.'s Dep., pp. 10 & 16. Plaintiff also argues that Defendant was not trained in the filed of orthopedics and was not licensed to dispense pain medication. Pl.'s Mem. of Law, p. 7. As a result of the inadequate care, Defendant allegedly misdiagnosed Plaintiff's condition. *Id.* at p. 8.

Mere "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *Rowland v. Hildreth*, 1993 WL 287646, at *12 (S.D.N.Y. July 27, 1993) (citing *Estelle*, 429 U.S. at 107)) ("[A] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."). "Inmates do not have a right to choose a specific type of treatment." *Veloz v. New York*, 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004). The claimed indifference coming from Defendant's failure to order an MRI or other tests or procedures therefore fails to state a claim.

**\*7** Plaintiff also alleges he was "alienated" and "disrespected" because Defendant was "preoccupied" during their meetings. Pl.'s Dep., pp. 16, 41. Such allegations regarding the bedside manner of medical staff do not amount to a constitutional violation. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at an inmate generally do not rise to th[e] level" of a constitutional violation.); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) (finding that the plaintiff's allegation that nurse "yelled" at him did not state a claim as "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights"). Indeed, during his deposition, Plaintiff testified that he does not believe that Defendant "intentionally wanted to hurt [him]." Pl.'s Dep., p. 156. The claim that Defendant was not qualified or licensed to provide treatment does not rise to the level of a constitutional violation. *See Witt v. Bell*, 551 Fed.Appx. 240, 241 (5th Cir. 2014) (holding that allegations premised on medical examinations performed by nurses who did not have, in the plaintiff's opinion, the requisite medical knowledge to treat a broken toe amount to allegations of medical

malpractice); *see also* *Blair v. Schulle*, 43 F.3d 669 (5th Cir. 1994) (dispensing medication without a license is nothing more than an action based on negligence).

Viewing the evidence in a light most favorable to Plaintiff, no reasonable juror could conclude that Defendant was deliberately indifferent to Plaintiff's medical needs. The admissible record detailing Plaintiff's continuous medical treatment belies any claim of deliberate indifference. The undisputed record establishes that from June 2012 until October 2015, Plaintiff was repeatedly treated by DOCCS' medical staff for a myriad of complaints including foot pain, wrist pain, eczema, hearing issues, and right shoulder pain. *See generally* Pl.'s Med. Rec. Upon Defendant's orders and referrals, Plaintiff received medications including Tylenol with Codeine, Voltaren, and Mobic; medical boots; a nicotine patch; and underwent x-rays and an EMG for wrist pain. Pl.'s Med. Rec., pp. 60, 314, 326, 337, 395, 398, 403, & 404. Defendant recommended consultations with an audiologist and, as a result, Plaintiff received bi-lateral hearing aids. Pl.'s Med. Rec., pp. 388-394. Defendant also referred Plaintiff for removal and a biopsy of a mass on his left shoulder. Pl.'s Med. Rec., p. 390.

Finally, Plaintiff claims that Defendant was deliberately indifferent to his medical needs because he refused to approve Plaintiff's request for a bottom bunk and medical excuse without speaking to or examining Plaintiff. Pl.'s Decl., pp. 2-3. An inmate may state an Eighth Amendment claim for improper placement in a top bunk, assuming that the proper subjective standard is met. *See, e.g., Briel v. Fields*, 2013 WL 1833248, at *3 (E.D.N.Y. May 1, 2013) (finding that the plaintiff's allegations that the defendants were aware of his back condition and recommendation and that he be placed in a bottom bunk, but purposely assigned him to a top bunk, stated claim under subjective prong, and collecting).

Plaintiff has failed to present admissible proof of a medical need for a bottom bunk order or medical excuse. Plaintiff was evaluated after requesting a bottom bunk permit in March 2012 and found not to meet the criteria. Ferrari Decl., ¶ 11; Pl.'s Med. Rec., p. 339. Plaintiff's belief that Defendant should have issued an order is nothing more than a dispute over the appropriate course of treatment, which does not state an Eighth Amendment claim. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *see also* *Gillespie v. New York State Dep't of Corr. Servs.*, 2010 WL 1006634, at *6 (N.D.N.Y. Feb. 22, 2010) (holding that "the decisions not to give plaintiff a 'lower bunk' pass or order other medical restrictions on plaintiff's work and other activities were all medical judgments and did not deprive plaintiff of constitutionally adequate medical care").

Given that Plaintiff has failed to show that the Defendants acted with deliberate indifference, his Eighth Amendment claims fail as a matter of law. Thus the Court recommends that the Defendant's Motion for Summary Judgment on this claim be granted. [6]

## B. State Law Claims

**\*8**  In addition to his claims brought pursuant to ⚑ 42 U.S.C. § 1983, Plaintiff also asserts state law claims for negligence and medical malpractice. Dkt. No. 69, Am. Compl. at ¶ 42. Defendant contends that this claim is barred by N.Y. Corrections Law ⚑ § 24, which states:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

⚑ N.Y. Correct. Law § 24.

The Second Circuit has held that "the immunity from suit in state court provided to DOCS employees by ⚑ § 24 extends to suits for tort claims based on state law against DOCS employees in federal court." *Brown v. Dep't of Corr. Servs.*, 2011 WL 2182775, at \*9 (W.D.N.Y. June 2, 2011) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)). Here, Plaintiff has alleged acts that clearly would fall within the scope of Defendant's employment as a state prison official. Thus, Plaintiff is

barred from bringing state law claims against the Defendant in his individual capacity in federal court. *See Baker*, 77 F.3d at 15-16. As a result, the Court recommends **DISMISSING** Plaintiff's state law claims.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 106) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to ⚑ 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [7] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in Fed. Supp., 2018 WL 1179603

Williams v. Ferrari, Not Reported in Fed. Supp. (2018)

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 19 of 64

# Footnotes

1    Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* While Plaintiff's Counter-Statement of Material Facts is not supported by proper record citations, *see* Dkt. No. 113-1, in deference to Plaintiff's pro se status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See* *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

2    Docket Number 107 is a Declaration of Defendant's counsel providing certified copies of Plaintiff's medical records. Though docketed as a series of different exhibits, the records are sequentially Bates stamped and citation throughout this Report and Recommendation shall be to the Bates stamps provided by Defendant in the form Pl.'s Med. Rec., p. _.

3    The x-rays were delayed due to Plaintiff's absence from the facility. Pl.'s Med. Rec., p. 323.

4    In the Memorandum of Law, Defendant notes that the Amended Complaint included a Fourteenth Amendment Due Process claim. *See* Dkt. No. 106-3 at p. 3. Defendant argues however, that this claim did not survive the Court's review. *See id.* Plaintiff did not respond to Defendant's argument. For the reasons set forth in the Decision and Order filed on August 14, 2016, the claims against Defendant are "limited" to Plaintiff's Eighth Amendment medical indifference and state law claims. *See* Dkt. No. 68 at p. 6.

5    The Court recognizes that Plaintiff disputes that he made such a report at reception. However, the report is present in the medical records upon which Defendant reasonably relied in assessing Plaintiff's medical history and need for treatment. That reliance is what is most relevant for consideration of the subjective prong of Plaintiff's Eighth Amendment claim.

6    Defendant also seeks summary judgment based on qualified immunity. Given the Court's recommendation with respect to the merits of the Eighth Amendment claim, the Court also recommends that qualified immunity would serve as an additional basis for granting defendant summary judgment. Qualified immunity is appropriate

**Williams v. Ferrari, Not Reported in Fed. Supp. (2018)**

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 20 of 64

when a reasonable official could not have understand that his conduct violated the constitutional right in question. ⚑*Raspardo v. Carlone,* 770 F.3d 97, 113 (2d Cir. 2014). While there is no question that Plaintiff had a clearly established right to adequate medical care, given the medical evidence available to Defendant he could not have reasonably have known that the course of treatment described above constituted a denial of Plaintiff's constitutional right to medical care. Judgment on the ground of qualified immunity is therefore also appropriate.

7    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1443254
Only the Westlaw citation
is currently available.
United States District Court,
E.D. New York.

Lauren ANDERSEN, Plaintiff,
v.
NORTH SHORE LONG ISLAND
JEWISH HEALTHCARE
SYSTEM'S ZUCKER HILLSIDE
HOSPITAL, et al., Defendants.

No. 12–CV–1049 (JFB)(ETB).
|
Signed March 26, 2015.

**Attorneys and Law Firms**

Kevin T. Mulhearn, Orangeburg, NY, for
Plaintiff.

Jonathan B. Bruno, Alex Nathan Niederman,
James F. Horton, Kaufman, Borgeest & Ryan
LLP, John Thomas Seybert, Sedgwick LLP,
New York, NY, for Defendants.

ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Before the Court is a Report and
Recommendation ("R & R") from Magistrate
Judge Lindsay, advising the Court to grant
the following defendants' motions to dismiss
the plaintiff's claims under Federal Rule of
Civil Procedure 12(b)(6): (1) North Shore Long
Island Jewish Healthcare System's Zucker
Hillside Hospital, Joseph M. Schulman, Dr.

Alan J. Mendelowitz, Dr. Paul Pankal, Dr.
Lyudmila Karlin, Dr. Harsimran Brar, Dr.
Lauren Hanna, Nurse Catherine Ames, Nurse
Soosamma Kompancaril, Nurse Abraham
Lopez, and Psychologist Shveta Mittal
(collectively, the "Hillside Defendants"); (2)
United Health Group, Inc. ("United"); and (3)
the City of New York. For the reasons set forth
below, the Court adopts the thorough and well-
reasoned R & R in its entirety, and dismisses the
plaintiff's claims against those defendants with
prejudice.

**I. PROCEDURAL HISTORY**

On March 2, 2012, plaintiff filed a
complaint against North Shore Long Island
Jewish Healthcare System's Zucker Hillside
Hospital ("Hospital") and numerous individual
defendants, bringing various claims arising out
of her alleged involuntary admission to the
Hospital on June 12, 2011 and commitment for
a period of eighteen days. Plaintiff has since
amended the complaint four times.

Plaintiff filed her Third Amended Complaint
on March 29, 2013. On June 21, 2013, plaintiff
filed a motion to withdraw the Third Amended
Complaint and substitute a revised Third
Amended Complaint. Defendants filed motions
to dismiss the Third Amended Complaint, and
this Court referred those motions to Magistrate
Judge Lindsay. By R & R issued on February
12, 2014, Judge Lindsay recommended that
defendants' motions be granted and plaintiff's
motion for leave to amend her complaint
be denied. (Docket Entry 168.) Plaintiff
retained counsel shortly thereafter and counsel
conveyed to the Court that plaintiff would not

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 22 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

oppose adopting the R & R if plaintiff were granted leave to amend the complaint. By Order dated March 13, 2014, this Court adopted the R & R and granted the defendants' motions to dismiss, but also granted plaintiff leave to amend. (Docket Entry 174.)

Plaintiff filed her Fourth Amended Complaint on April 14, 2014. (Docket Entry 176.) In the Complaint, plaintiff continues to assert claims against the Hillside Defendants, but dropped the New York State parties and Michael Bloomberg as defendants, and added the City of New York and United as defendants. Hillside Defendants and the City of New York separately moved to dismiss the Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on May 9, 2014. United moved to dismiss on August 8, 2014. (Docket Entries 179, 183, and 195.) By order dated September 30, 2014, this Court referred the motions to dismiss to Magistrate Judge Lindsay for a R & R. (Docket Entry 199.)

On January 12, 2015, Magistrate Judge Lindsay issued an R & R, recommending that all of the motions to dismiss be granted. (R & R, dated January 12, 2015.) The R & R further instructed that any objections to the R & R be submitted within fourteen (14) days of service of the R & R. (*Id.* at 27.) Plaintiff filed her objections to the R & R on January 26, 2015. All defendants filed responses to the plaintiff's objections: the City of New York on January 30, 2015; the Hillside Defendants on February 9, 2015; and United on February 9, 2015. (Docket Entries 203–05.)

## II. STANDARD OF REVIEW

**\*2** A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See* 🚩*DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); 🚩*Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). When a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *See* 🚩28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## III. ANALYSIS

### A. MAGISTRATE JUDGE LINDSAY'S R & R

In her R & R, Magistrate Judge Lindsay recommends that the Court grant the Hillside Defendants, the City of New York, and United's motions for dismissal under Federal Rule of Civil Procedure 12(b)(6). Specifically, for the Hillside Defendants, Magistrate Judge Lindsay finds dismissal of all claims warranted on the following grounds: (1) plaintiff fails to allege requisite state action by the private defendants to support her ⚑42 U.S.C. § 1983 claim; (2) plaintiff did not plead sufficient facts to demonstrate a conspiracy between the Hillside Defendants and the Port Authority Police and EMS, or to suggest that defendants were motivated by racial or other class-based animus to support her claim under ⚑42 U.S.C. § 1985 (and beyond that, the claim is likely waived because plaintiff neglected to address it in her opposition papers); (3) plaintiff fails to establish a plausible claim of discrimination based upon her psychiatric and physical disabilities to support her claims under both Title III of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act; (4) plaintiff's Health Insurance Portability and Accountability Act ("HIPAA") claims should be dismissed because they include the same verbatim allegations that were dismissed in the Third Amended Complaint, and plaintiff has conceded that there is no private right of action under HIPAA; and (5) the Court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. (R & R, dated January 12, 2015, at 7–23.)

**\*3** Magistrate Judge Lindsay recommends dismissal of the ⚑Section 1983 claim against United, on the grounds that plaintiff fails to plead sufficient facts to demonstrate state action by United, or a conspiracy between United and a state actor, especially given that the Magistrate Judge Lindsay already concluded that were no allegations in the complaint plausibly suggesting that Hillside Defendants were state actors. Accordingly, having recommended dismissal of the federal claims against United, Judge Lindsay advised the Court to decline to exercise supplemental jurisdiction over the state law claims against United. (*Id.* at 24–25.)

Finally, Magistrate Judge Lindsay recommends that the Court dismiss the plaintiff's ⚑Section 1983 *Monell* claim against the City of New York, which alleges that members of the New York City Police Department failed to investigate her alleged mistreatment while at the Hospital. Judge Lindsay found that plaintiff set forth no facts supporting a plausible municipal policy, custom or usage that violated her constitutional rights. (*Id.* at 26–27.)

### B. PLAINTIFF'S OBJECTIONS

Plaintiff filed timely objections to the R & R on the grounds that Magistrate Judge Lindsay "erred in finding that Plaintiff failed to allege the requisite 'state action' and recommending that her ⚑42 U.S .C. § 1983, Title II of the ADA and § 504 of the Rehabilitation Act claims be dismissed." (Objections, dated January 26, 2015, at 2.) Notably, plaintiff's objections only address Magistrate Judge Lindsay's recommendations regarding those two claims against the Hillside Defendants. Plaintiff files no objections with respect to the portions of the R & R that deal with the other claims against the Hillside Defendants, or the

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 24 of 64

claims against United and the City of New York. In any event, the Court has conducted *de novo* review of the entire R & R and adopts the R & R in its entirety.

### 1. 🚩 Section 1983 Claim against Hillside Defendants

With respect to her 🚩 Section 1983 claim against the Hillside Defendants, plaintiff objects to Magistrate Judge Lindsay's finding that she failed to plead sufficient facts to plausibly allege that the Hillside Defendants are state actors. In large part, plaintiff repeats the arguments set forth in her briefing papers, maintaining that the Hillside Defendants are state actors because they assumed a public function by "determining whether Plaintiff should be involuntarily committed and forcibly medicated"—when she alleges she was not a threat to herself or others—without providing her with a State-supervised judicial hearing. (Objections, dated January 26, 2015, at 9.) She also claims that Magistrate Judge Lindsay did not give sufficient weight to New York case 🚩 *Rivers v. Katz,* 67 N.Y.2d 485, 504 N.Y.S.2d 74, 495 N.E.2d 337 (1986), and misconstrued the relevance of 🚩 *Doe v. Rosenberg,* 166 F.3d 507 (2d Cir.1999).

Having reviewed plaintiffs objections, the relevant law, and the R & R, the Court agrees with Magistrate Judge Lindsay's conclusion that "involuntary confinement has traditionally been a private remedy and thus is not a public function ... [and that plaintiff has made] ... no allegations in [this case] to justify bringing this action." (R & R, dated January

12, 2015, at 13.) Furthermore, as Magistrate Judge Lindsay points out, even if the plaintiff's allegations were true (namely, "that the Hospital improperly committed her because the requirements of New York's Mental Hygiene Law—that a doctor certify that Plaintiff is a danger to herself or others—were not met in this case"), plaintiff still fails to allege "how this transforms the Hospital's private conduct in involuntarily committing her ... to a function traditionally performed by the state." (*Id.* at 13–14). As such, the Court fully adopts Magistrate Judge Lindsay's recommendation regarding the plaintiff's 🚩 Section 1983 claim against the Hillside Defendants.

### 2. ADA and Rehabilitation Act Claims against Hillside Defendants

 **\*4** Plaintiff also objects to Magistrate Judge Lindsay's findings with respect to her claims under Title III of the ADA and Section 504 of the Rehabilitation Act. Plaintiff asserts that the Hospital's "refusal to provide accommodations for Plaintiff's treatment request (access to emergency services to evaluation her back for potential injury) was based on Plaintiff's alleged mental illness." (Objections, dated January 26, 2015, at 14.) Plaintiff disputes Judge Lindsay's conclusion that "plaintiff fails to allege that she was treated differently *because of* her alleged disability" and that her allegations regarding "the adequacy of the services she received ... are insufficient to state a claim for discrimination under either statute." (R & R, dated January 12, 2015, at 20.) Plaintiff maintains that the Hillside Defendants' "denial of reasonable inquiry into Plaintiff's valid injury, accommodations,

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

without any demonstration of genuine concern, was due to the fact that Hospital personnel assumed Plaintiff, because of her mental [illness], was fabricating the complaint" and "simply because they tend to treat involuntarily committed patients as less deserving of quality care than voluntary and medical ward patients." (Objections, dated January 26, 2015, at 16.)

However, upon review, the Court agrees with Judge Lindsay's finding that plaintiff fails to "provide any specific allegations in the Fourth Amended Complaint that would permit a plausible inference that Plaintiff has suffered from disability discrimination ." (R & R, dated January 12, 2015, at 20.) Though plaintiff asserts that the Hillside Defendants "sterotyp[ed] Plaintiff as not credible based on her alleged mental illness[ ]" and as a result "den [ied] her request for reasonable and necessary accommodations" (Objections, dated January 26, 2015, at 17), plaintiff fails to allege any facts indicating that she was treated differently because of any disability. As a result, plaintiff's assertions in her Fourth Amended Complaint, briefing papers, and Objections are speculative at best. The Court also notes that plaintiff's disability claims were copied nearly verbatim from those asserted in the Third Amended Complaint, which this Court previously dismissed for failing to establish a plausible claim of discrimination. (Docket Entry 168.)

The Court notes the plaintiff also objects to the R & R on the grounds that Judge Lindsay "failed to acknowledge the Complaint's allegations pertaining to discrimination against Plaintiff based on her gender, race, age, body

habitus, and political views." (Objections, dated January 26, 2015, at 19.) However, similar to her disability discrimination claims, the Court finds that plaintiff also fails to make any plausible allegations demonstrating that the quality of treatment she received resulted from discrimination based on any other protective status.

Accordingly, the Court adopts Magistrate Judge Lindsay's recommendation and dismisses the plaintiff's ADA and Rehabilitation Act claims against the Hillside Defendants, because plaintiff fails to set forth a plausible claim of discrimination.

### 3. Remaining Claims

**\*5** Plaintiff does not file any objections to Magistrate Judge Lindsay's recommendations regarding the ⚑42 U.S.C. § 1985 conspiracy claim and the other federal claims against the Hillside Defendants, the claims against United, and the claims against the City of New York, and thus *de novo* review of these claims is not required. However, the Court has conducted a *de novo* review of the full R & R in an abundance of caution and HEREBY ADOPTS the well-reasoned and thorough R & R in its entirety with respect to these remaining claims.

### C. LEAVE TO REPLEAD

Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires ." Fed.R.Civ.P. 15(a). Thus, in

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 26 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

dismissing plaintiff's claims, the Court has considered whether to dismiss with or without prejudice. However, as stated *supra,* the Court declines to provide plaintiff with an opportunity to re-plead and dismisses the claims with prejudice for two reasons.

First, plaintiff has not requested an opportunity to re-plead, and has failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant leave to re-plead. *See, e.g.,* ⚠ *Ackermann v. Doyle,* 43 F.Supp.2d 265, 275 (E.D.N.Y.1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.")

Second, plaintiff has been given ample opportunity to allege a claim—in fact, this is the plaintiff's Fourth Amended Complaint —and has failed to do so. In the March 13, 2014 Memorandum and Order, dismissing the Third Amended Complaint, the Court identified various pleading defects, but granted plaintiff one more opportunity to amend given that plaintiff was newly represented and her counsel "expressed his intention to narrow the complaint and bring the amended complaint against fewer defendants." (Docket Entry 174 at 2.) However, in the Fourth Amended Complaint filed after the Court's decision, plaintiff failed to cure those pleading defects, and repeated certain claims contained in the prior complaint verbatim. Under these circumstances, the Court declines to grant

plaintiff yet another opportunity. *See* ⚑ *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 72 (2d Cir.1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (*citing* ⚑ *Armstrong v. McAlpin,* 699 F.2d 79, 93–94 (2d Cir.1983)).

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Court adopts the R & R in its entirety. Accordingly, the defendants' motions to dismiss the Fourth Amended Complaint are granted. Plaintiff's federal claims against the Hillside Defendants, United, and the City of New York are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* ⚑ 28 U.S.C. § 1367(c)(3); ⚑ *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006). The Clerk of the Court shall enter judgment accordingly and close the case.

**\*6** SO ORDERED.

LAUREN ANDERSEN, Plaintiff,
-against-

THE NORTH SHORE LONG ISLAND JEWISH HEALTHCARE SYSTEM's ZUCKER HILLSIDE HOSPITAL, JOSEPH M. SCHULMAN, DR. ALAN J.

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...
Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 27 of 64
2015 WL 1443254

MENDELOWITZ, DR. PAUL PANKAL, DR. LYUDMILA KARLIN, DR. HARSIMRAN BRAR, DR, LAUREN HANNA, NURSE CATHERINE AMES, NURSE SOOSAMMA KOMPANCARCIL, NURSE ABRAHAM LOPEZ, PSYCHOLOGIST SHVETA MITTAL, JOHN and JANE DOES # 1–10, the CITY OF NEW YORK, comprising the New York Police Department "NYPD" and the Fire Department of New York's Emergency Medical Services "FDNY–EMS", and individual employees: NYPD Detective Michael T. O'BRIEN, and NYPD Lieutenant Antoinette PETRUZZELLO, and Joh Doe FDNY–EMS technician known as "Frank 50" and THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and John Doe officer known as "P.O. CORWIN 2524", and "T.C. CARBANARO", and Jane Doe officer known as "LIANTONIO", AND Lt. Michelle SERRANO, and UNITEDHEALTH GROUP, INC., Defendants.

## REPORT AND RECOMMENDATION

LINDSAY, United States Magistrate Judge.

This action arises out of the involuntary confinement of plaintiff Lauren Andersen ("Plaintiff") at North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital (the "Hospital"). Before the Court, on referral from District Judge Bianco, are the motions to dismiss by defendants (1) the Hospital, Joseph M. Schulman, Dr. Alan J. Mendelowitz, Dr. Paul Pankal, Dr. Lyudmila Karlin, Dr. Harsimran Brar, Dr. Lauren Hanna, Nurse Catherine Ames, Nurse Soosamma Kompancarcil, Nurse Abraham Lopez, and Psychologist Shveta Mittal (collectively, the "Hillside Defendants"); (2) United Health

Group, Inc. ("United"); and (3) the City of New York, all pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court respectfully reports and recommends that the defendants' motions be granted in their entirety.

## I. BACKGROUND

### A. Factual Background

The Court presumes familiarity with the underlying facts and procedural history of this case, which are set forth in great detail in Judge Boyle's Report and Recommendation dated January 23, 2013, and this Court's Report and Recommendation dated February 12, 2014. Accordingly, the Court will summarize only those facts relevant to the pending motions.

Plaintiff identifies herself as a 50–year old woman with psychiatric disabilities stemming from a rape experience, a problematic medical history, physical disabilities from a proctocolectomy and spine surgery, severe depression, and "a history of self-injury ... having attempted suicide via an overdose in 2001." Fourth Am. Compl. ¶¶ 1–2. This action arises out of Plaintiff's admission to the Hospital on June 12, 2011 and her involuntary commitment to the Hospital for a period of eighteen days. Id. ¶ 6.

Briefly, Plaintiff's hospitalization was precipitated by her attempt to purchase an airline ticket to the United Kingdom without a passport from British Airways at John F. Kennedy International Airport on June 12, 2011. Id. When British Airways refused to

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 28 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

permit Plaintiff to travel without a passport, Plaintiff requested to speak to the press. *Id.* ¶ 7. British Airways called the Port Authority Police for assistance who informed Plaintiff she could either return to her home or go to the Hospital. *Id.* Plaintiff states that the officers told her that if she went to the Hospital, she could be cleared to travel and would be able to speak to the press, so she agreed to go to the hospital voluntarily. *Id* . EMS transported Plaintiff to the Hospital for evaluation, accompanied by the Port Authority Police. *Id.* ¶ 8.

**\*7** Upon her arrival at the psychiatric emergency room at the Hospital, Plaintiff was denied the opportunity to speak with the press and "one or more of the [Port Authority Police] officers had conversations with people believed to be nurses and doctors employed by HILLSIDE, openly collaborating with them about further detention of the Plaintiff." *Id.* ¶ 9. Despite her request to be treated as an out-patient, Plaintiff was involuntarily admitted as an in-patient several hours later by Dr. Harsimran Brar. *Id.* ¶¶ 10–14. Plaintiff alleges that she was admitted in violation of 🚩New York Mental Hygiene Law § 9.39—which requires a finding that a patient is either a danger to herself or to others—because Plaintiff did not meet either criteria. *Id.* ¶ 15. Plaintiff further alleges that she was never served with written notice of her status, as required pursuant to this law, *id.* ¶ 17, and that the decision by the Hospital to retain her after 48 hours "in the exercise of medical judgment on the part of all the defendant psychiatrists" constituted negligence and medical malpractice, *id* . ¶ 21.

On June 14, 2011, Plaintiff tried to escape the Hospital by climbing a chain link fence, but Hospital employees pulled her off the fence and forced her indoors. *Id.* ¶¶ 66–67. Pursuant to Hospital policy, Hospital staff insisted that Plaintiff take off her clothing and put on a gown. *Id.* ¶ 67. When staff members refused to provide Plaintiff with a copy of the policy, Plaintiff refused to disrobe and was thereafter forcibly stripped her jeans and locked in a cell. *Id.* ¶¶ 69–70, 72. When she was eventually let out of the cell, she was forced to walk down the hallway in her panties to her room, where she directed to change into a gown in the presence of Hospital staff. *Id.* ¶ 74.

During her 18–day stay, Plaintiff repeatedly requested to be discharged, but her requests were denied. *Id.* ¶ 22. In addition, the Hospital "ignored all of her complaints and requests for hearings." *Id.* ¶ 26; *see also id.* ¶ 25. "In desperation," Plaintiff contacted defendant United to try to cancel her medical coverage so the "Hospital would be financially motivated to discharge her." *Id.* ¶ 22. United "told her she would have to personally visit their office to do so, and the Hospital would not allow her to go." *Id.* ¶ 22. As a result, the Hospital detained Plaintiff the maximum period for which United agreed to pay and discharged Plaintiff on the "last reimbursable day." *Id.* ¶ 24.

At some point during her hospitalization, Plaintiff contacted Mental Hygiene Legal Service ("MHLS") by a payphone. *Id.* ¶ 27. She spoke with an "Andrew Murray" at MHLS who told her that attorney Brian Wellington would meet with her. *Id.* On June 29, 2011, attorney Wellington met with Plaintiff but "by that time it was too late for Wellington to do anything to ameliorate the situation because the damage had been done in the previous seventeen days,

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 29 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

and the staff scheduled the Plaintiff to be discharged the next day." *Id.* ¶¶ 31–32. On June 30, 2011, Plaintiff was discharged from the Hospital. *Id.* ¶ 120.

**B. Procedural Background**

 **\*8** Plaintiff, appearing *pro se,* commenced this action on March 2, 2012, and filed an Amended Complaint on March 12, 2012. DE 1, 6. On April 12, 2012, Plaintiff moved for leave to file a Second Amended Complaint. DE 16. The district court granted Plaintiff's motion without making any findings as to the merits of the amendments in light of Plaintiff's *pro se* status on April 23, 2012, and granted defendants leave to file a motion to dismiss the Second Amended Complaint. DE 19. On April 30, 2012, Plaintiff moved for leave to file a Revised Second Amended Complaint. DE 23. By Order dated May 3, 2012, the district court granted Plaintiff's motion without making any findings as to the merits of the amendments in light of Plaintiff's *pro se* status, and granted defendants leave to file a motion to dismiss the Revised Second Amended Complaint. DE 24.

On June 6, 2012, Plaintiff moved for leave to file a Third Amended Complaint, DE 39, but by Order dated June 15, 2012, the district court stayed any response to Plaintiff's June 6, 2012 motion to amend pending the Court's review of the motion to dismiss the Revised Second Amended Complaint, DE 45. The district court referred the motion to dismiss to Magistrate Judge Boyle, and by Report and Recommendation dated January 23, 2013, Magistrate Judge Boyle recommended that defendants' motion to dismiss be granted and Plaintiff be granted leave to amend her

complaint. DE 75. The district court adopted this portion of the Report and Recommendation in its entirety on March 1, 2013, dismissed the Revised Second Amended Complaint, and granted Plaintiff "an opportunity to amend her complaint one final time." DE 81.

Plaintiff filed her Third Amended Complaint on March 29, 2013. DE 87. The Third Amended Complaint was 146 pages long— comprised of 84 pages of pleading and 62 pages of exhibits—and asserted claims against the Hillside Defendants, various state defendants, and Michael Bloomberg. *Id.* On May 13, 2013, the district court gave defendants leave to file motions to dismiss the Third Amended Complaint. DE 101. On June 21, 2013, Plaintiff filed a motion to withdraw the Third Amended Complaint and substitute a new Third Amended Complaint. DE 123. Thereafter, Plaintiff requested a stay of the pending motions to dismiss until the Court ruled on Plaintiff's pending motion to file an amended complaint. DE 130. By Order dated August 1, 2013, the district court denied Plaintiff's requests, ruling that Plaintiff's motion to amend would be treated as a motion for leave to re-plead once the Court determined whether the initial Third Amended Complaint survived the motions to dismiss. DE 132. The district court referred defendants' motions to dismiss to the undersigned, and by Report and Recommendation dated February 12, 2014, this Court recommended that defendants' motions be granted and that Plaintiff's motion for leave to replead be denied. DE 168.

Thereafter, Plaintiff retained counsel. The district court held a conference on March 13, 2014, at which time Plaintiff's counsel

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 30 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

"expressed his intention to narrow the complaint and bring the amended complaint against fewer defendants." DE 174. Counsel made clear that if Plaintiff was granted leave to amend the complaint, she had no objections to the Court adopting the Report and Recommendation in its entirety. By Order dated March 13, 2014, the district court adopted the Report and Recommendation in its entirety, granted the defendants' motions to dismiss, and denied the *pro se* motion to amend. *Id.* However, Plaintiff was granted leave to amend the complaint "in accordance with counsel for plaintiff's representations and the Court's instructions during the ... conference." *Id.*

**\*9** Plaintiff filed the Fourth Amended Complaint on April 14, 2014. DE 176. The Fourth Amended Complaint is 70 pages long, including a 1–page exhibit. *Id.* The pleading continues to assert claims against the Hillside Defendants but has dropped the state defendants and Michael Bloomberg from the lawsuit. *Id.* Instead, several new defendants have been added, including the City of New York and United. With the exception of a few paragraphs which have been omitted, and several which have been added, the Fourth Amended Complaint is a nearly verbatim copy of the Third Amended Complaint, causing this Court to again expend its resources addressing many of the same deficiencies. The Hillside Defendants, United, and the City of New York now move to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the undersigned recommends that the motions be granted. [1]

## II. STANDARD OF REVIEW

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a[d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted)).

## III. DISCUSSION

### A. The Hillside Defendants

The Fourth Amended Complaint asserts five federal claims against the Hillside Defendants: (1) constitutional violations under 42 U.S.C.

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 31 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

§ 1983); (2) conspiracy under 28 U.S.C. § 1343 and ⚑ 42 U.S.C. § 1985; (3) disability claims under Title III of the ADA, 42 U.S.C. §§ 12181 et seq.; (4) disability claims under Section 504 of the Rehabilitation Act, 🚩 29 U.S.C. § 794; and (5) violations under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Each claim will be addressed in turn.

### 1. 42 U.S.C. § 1983

In her Fourth Amended Complaint, Plaintiff continues to assert claims pursuant to ⚑ 42 U.S.C. § 1983 premised upon alleged violations of her First, Fourth, Fourteenth, and Eighth Amendment rights. *See* Fourth Am. Compl. ¶¶ 158–170, 252–317. However, for the first time, Plaintiff now also bases her ⚑ Section 1983 claim upon an alleged violation of her Second Amendment rights. *Id.* at ¶ 168. As discussed below, Plaintiff fails to state a valid ⚑ Section 1983 cause of action because she has not sufficiently alleged that the Hillside Defendants —a private hospital and its employees— engaged in "state action."

**\*10** ⚑ Section 1983 of Title 42 of the United States Code provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

⚑ 42 U.S.C. § 1983. "⚑ Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." ⚑ *Filarsky v. Delia,* —— U.S. ——, ——, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). To state a claim under ⚑ 42 U.S.C. § 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under state law," and (2) that such conduct "deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." ⚑ *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (internal quotation marks and citation omitted). "The first inquiry [under ⚑ Section 1983], therefore, is whether the actions alleged by the plaintiff[ ] come within the definition of under color of state law." *Garcia v. Paylock,* No. 13–CV–2868, 2014 WL 298593, at \*6 (E.D.N.Y. Jan.28, 2014) (internal quotation marks and citation omitted). That is, the critical issue is whether Plaintiff has properly alleged that the Hillside Defendants, as private parties, were state actors when they involuntarily hospitalized her and engaged in the alleged unlawful conduct.

"A private actor may be liable under ⚑ § 1983 only if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." ⚑ *Sykes v.*

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 32 of 64

2015 WL 1443254

*Bank of Am.,* 723 F.3d 399, 400 (2d Cir.2013) (internal quotation marks and citation omitted); *see also* ⚑ *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 744 (2d Cir.2003) ("The Supreme Court has recognized that an individual is acting under color of state law when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' ") (quoting ⚑ *Polk Cnty. v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). As the Second Circuit has explained:

> For purposes of ⚑ section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

⚑ *Sybalski v. Indep. Group Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (per curiam) (citation omitted); *see* ⚑ *Doe v. Harrison,* 254 F.Supp.2d 338, 342 (E.D.N.Y.2003) ("[A] private party's conduct has been recognized as constituting state action where the action is (a) the result of state compulsion, (b) public function, or (c) a joint action as a result of a close nexus between public and private actors.") (internal quotation marks and citation omitted).

**\*11** In the Court's January 23, 2013 Report and Recommendation (which was later adopted by the district court), Judge Boyle found that "[a]lthough plaintiff maintains that defendants were acting in concert with local law enforcement at the time that she was involuntarily hospitalized," Plaintiff failed to allege any facts to support her claim that defendants acted under color of state law. DE 75. Similarly, in this Court's February 12, 2014 Report and Recommendation (which was also adopted by the district court), the undersigned found that Plaintiff had failed to plead that any of defendants' actions constituted state action. DE 168. Specifically, the Court found that Plaintiff provided no facts to support her conclusory assertions that the Port Authority Police delegated a public function to the Hospital or that there was joint action between the Hospital and the Port Authority Police to involuntarily commit Plaintiff to the Hospital's psychiatric unit. In addition, the Court found that the fact that the Hillside Defendants may have received state funding did not suffice to plead state action absent any allegation of concerted action with state officials. *Id.*

The Fourth Amended Complaint now alleges that the Hillside Defendants are state actors under all three tests. First, Plaintiff alleges that the Hillside Defendants are state actors under the compulsion test because "the hospital employees act[ed] under the compulsion of, and in concert with, the Port Authority police and FDNY–EMS to detain the Plaintiff." *Id.* ¶ 303. Second, Plaintiff alleges that the Hillside Defendants are state actors under the joint action test because the Hospital acted jointly with the Port Authority Police, who initiated the evaluation process, arranged for Plaintiff's

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 33 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

transport to the Hospital, and received federal funding. *Id.* ¶¶ 289–307. Lastly, Plaintiff alleges that the Hillside Defendants are state actors under the public function test because the Hospital "performed a 'public function' such as to constitute state action in committing Plaintiff involuntarily and in compelling Plaintiff to take antipsychotic drugs against her will." Fourth Am. Compl. ¶ 254; *see also id.* ¶ 256 ("The civil commitment and treatment of the mentally ill is a 'public function' in New York."). For the reasons that follow, the Court finds that Plaintiff's arguments concerning state action are foreclosed by Second Circuit precedent.

In 🔖 *Doe v. Rosenberg,* 996 F.Supp. 343, 351–55 (S.D.N.Y.1998), the court held that private health care professionals and a private hospital did not engage in state action under all three of these tests when they involuntarily committed Doe to the psychiatric ward of Columbia Presbyterian Medical Center. The court found that the compulsion test was not met because although New York Mental Hygiene Law granted the defendant the authority to involuntarily hospitalize and medicate plaintiff, it did not compel defendant to do so. 🔖 *Id.* at 350–52. The court further held that the close nexus test was not met because the State's relationship with private hospitals was not sufficiently close; the Mental Hygiene Law merely authorizes private physicians and hospitals to commit involuntary commitments but "in no way influences the decisions to commit." 🔖 *Id.* at 352–53. Lastly, the court found that the public function test was not satisfied because civil commitment by a private physician was not a "public function" that constitutes state action when performed by a

private actor. 🔖 *Id.* at 353–54. Rather, after an extensive review of the historical record of involuntary confinement in New York State, the court determined that civil commitment had traditionally been a private remedy. *Id.* The *Doe* decision was affirmed by the Second Circuit "for substantially the reasons set forth in the district court's comprehensive and scholarly opinion." 🔖 *Doe v. Rosenberg,* 166 F.3d 507 (2d Cir.1999). Recently, the Second Circuit reaffirmed its holding in *Doe* in a new decision. 🔖 *McGugan v. Aldana–Bernier,* 752 F.3d 224, 229 (2d Cir.2014) ("Here, the question is whether the forcible medication and hospitalization of McGugan by private health care providers can fairly be attributed to the state. Our resolution of this question is circumscribed by prior authority."); *see also* 🔖 *Antwi v. Montefiore Med. Ctr.,* No. 14 Civ. 840, 2014 WL 6481996, at *5 (S.D.N.Y. Nov.18, 2014) ("[I]t is well-settled in the Second Circuit that a private hospital confining a patient under the New York [Mental Hygiene Law] is not acting under color of state law.").

**\*12** Here, as in *Doe,* Plaintiff has failed to allege state action by the Hillside Defendants. Beyond unsupported conclusory allegations, there are no allegations that the State "compelled" the Hillside Defendants to commit Plaintiff or that the decision to commit was the result of a "joint" decision between the Hillside Defendants and the State. Rather, the Fourth Amended Complaint alleges that it was the Hillside physicians who used their own discretion to commit her. The fact that the Port Authority Police "initiate[d] the evaluation process," Fourth Am. Compl. ¶ 291, consulted with a Hospital doctor before deciding to

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 34 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

transport Plaintiff to the Hospital, *id.* ¶ 295, and accompanied Plaintiff to the Hospital, *id.* ¶ 297, does not suggest that the Port Authority Police played any role in the challenged action in this case—Plaintiff's commitment by the Hillside Defendants. *See* 🔖*McGugan,* 752 F.3d at 230 (rejecting plaintiff's claim that state action existed when plaintiff's involuntary hospitalization occurred after state actors transported her to private hospital where there were no allegations that "the state actors requested, much less compelled [the hospital] to voluntarily hospitalize her and Circuit could not "discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors"). Indeed, this Court has already found that the allegations of the Third Amended Complaint—which are substantially the same as the present allegations—failed to support a claim of joint action. *See* February 12, 2014 Report and Recommendation at 31–32. Plaintiff's argument that the recent *McGugan* decision now supports her claim of state action is simply incorrect.

In addition, to the extent Plaintiff alleges that her involuntary commitment and forced medication was a public function, that argument has already been considered and rejected several times in this Circuit. *See* 🔖*McGugan,* 752 F.3d 224; 🔖*Hogan v. A.O. Fox Memorial Hosp.,* 346 F. App'x 627, 629 (2d Cir.2009); 🔖*Doe,* 166 F.3d 507. As stated by the district court in *Doe,* "[t]hat the State can authorize commitment through its *parens patriae* or police powers does not make it the exclusive prerogative of the State." 🔖996 F.Supp. at 356. Rather, involuntary

confinement has traditionally been a private remedy and thus is not a public function. 🔖*Id.* at 355–56. There are no allegations in the present case to justify bringing this action outside of the reasoning set forth in *Doe.* In her quest to convert the Hillside Defendants into state actors, Plaintiff now argues that "[t]he Hospital, by prescribing antipsychotic medication to Plaintiff, when she was unquestionably not a danger to herself or others, ... exercised power exclusively reserved to New York in derogation of Plaintiff's rights," DE 190 at 9, and did so "without affording her the State required judicial hearing and due process of law," *id.* at 10. Essentially, Plaintiff is alleging that the Hospital improperly committed her because the requirements of New York's Mental Hygiene Law—that a doctor certify that Plaintiff is a danger to herself or others—were not met in this case. [2] Even assuming Plaintiff's allegation are true, Plaintiff does not explain how this transforms the Hospital's private conduct in involuntary committing her—no matter how wrongful —to a function traditionally performed by the state. *See* 🔖*Antwi,* 2014 WL 6481996, at *5 ("[P]rivate conduct, no matter how discriminatory or wrongful, is not controlled by 🔖§ 1983 except in the limited situations where a private entity's challenged actions are fairly attributable to the state.") (internal citations and quotation marks omitted).

**\*13** Plaintiff's reliance on 🔖*Kia P. v. McIntyre,* 235 F.3d 749 (2d Cir.2000) and 🔖*Fabrikant v. French,* 691 F.3d 193 (2d Cir.2012) is wrong. As an initial matter, the Second Circuit explicitly held that neither case "casts doubt on the validity of our holding in

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 35 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

[*Doe* ]" and that neither case was "inconsistent with [*Doe* ]." 🚩 *McGugan,* 752 F.3d at 230. Moreover, both cases are distinguishable from the present action. In *Kia,* the Second Circuit held that a private hospital did not engage in state action when it refused to release an infant who tested positive for methadone because those actions were taken by the hospital in its capacity as a private provider of medical care. 🚩 235 F.3d at 756. Once the infant obtained medical clearance, however, and the hospital continued to hold her as part of its reporting and enforcement role for the state Child Welfare Administration because of its concern about the infant's mother, the hospital did engage in state action. 🚩 *Id.* at 756–57.

In *Fabrikant,* the court held that an animal rescue organization and its employees were state actors when they performed spayed and neutered seized animals without the owner's consent because the surgeries "were part of the state function of animal control delegated to the [rescue organization] by state law." 🚩 691 F.3d at 208–09 ("In operating on [plaintiff's] dogs following their seizure ... the ... defendants were not acting in a private capacity, but were exercising powers traditionally exclusively reserved to the State. Animal control is part of the state's police power.") (internal citation and quotation marks omitted). Here, in contrast to both of these decisions, it is well settled in the Second Circuit that involuntary confinement is not a public function.

Lastly, to the extent Plaintiff attempts to allege state action by claiming that the Hillside Defendants acted in concert with attorneys at MHLS who failed to "exercise [their] duty

to advise the Plaintiff of her legal rights and request a hearing," Fourth Am. Compl. ¶ 308, Plaintiff's claim is unavailing. It is well settled that an attorney employed by MHLS is not a state actor pursuant to 🚩 Section 1983. *Williams v. New York State Office of Mental Health,* No. 10–cv–1022, 2014 WL 1311405, at *4 (E.D.N.Y. Mar.31, 2014) (finding that attorneys employed by the Mental Hygiene Legal Services are not state actors even though MHLS is a "state-funded legal services agency under the direction of the New York State Office of Court administration") (citing 🚩 *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005)). The only exception to this rule is if "a court-appointed attorney conspires with a state official to violate the plaintiff's constitutional rights." 🚩 *Fisk,* 401 F.Supp.2d at 378. Here, there are no such allegations.

Inasmuch as there is no basis in the Fourth Amended Complaint's factual allegations for inferring that the Hillside Defendants were state actors, Plaintiff fails to establish a 🚩 Section 1983 claims against the Hillside Defendants.[3] Accordingly, the undersigned reports and recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims pursuant to 🚩 Section 1983 be granted.

## 2. 42 U.S.C. § 1985

**\*14** Plaintiff seeks damages pursuant to 28 U.S.C. § 1343, which gives federal courts original jurisdiction over conspiracy claims brought pursuant to 🚩 42 U.S.C. § 1985. Although the Fourth Amended Complaint asserts some allegations in support of a

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 36 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

purported conspiracy between the Hillside Defendants and the Port Authority Police and EMS, Fourth Am. Compl. ¶¶ 303, 305–06, the pleading expressly deletes the ⚑ Section 1985 claim previously asserted on pages 62–63 of the Third Amended Complaint. In addition, Plaintiff fails to address this claim in her opposition papers. Thus, it appears that Plaintiff has withdrawn this claim. In any event, to the extent Plaintiff is still pursuing a ⚑ Section 1985 conspiracy claim, such claim would fail.

⚑ Section 1985 creates a cause of action where "two or more persons in any State of Territory conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws." ⚑ 42 U.S.C. § 1985. To maintain a ⚑ § 1985 conspiracy action, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." ⚑ Webb v. Goord, 340 F.3d 105, 110 (2d Cir.2003). "[A] complaint containing only conclusory, vague, or general allegations of the conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." ⚑ Bod die v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997). Here, Plaintiff's allegations are wholly conclusory; she has failed to allege any facts sufficient to show the existence of a conspiracy designed to deprive her of her rights or any act taken in furtherance of such a conspiracy. Moreover, Plaintiff has failed to plead that defendants acted with racial or other class-based animus. ⚑ Britt v. Garcia, 457 F.3d 264, 270 n. 4 (2d Cir.2006). In her opposition brief, Plaintiff asserts that the

Hillside Defendants discriminated against her on the basis of race, gender and religion. DE 190 at 12. However, these allegations appear for the first time in her opposition to the instant motion and are not incorporated into her complaint. *See* ⚑ *Shah v. Helen Hayes Hosp.,* 252 F. App'x 364, 366 (2d Cir.2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Brenner v. Brenner,* 821 F.Supp.2d 533, 538 (E.D.N.Y.2011) ("It is well-settled that in examining the sufficiency of the Complaint, the allegations in the pleading —not the arguments advanced by counsel— control."). Even if the Court could consider these allegations, Plaintiff asserts no facts in her brief or complaint which suggest that her membership in a protected class was the basis for the alleged violation of her rights. The Court therefore recommends that any ⚑ Section 1985 claims asserted against the Hillside Defendants be dismissed.

### 3. Title III of the ADA and the Rehabilitation Act

**\*15** In Judge Boyle's January 23, 2013 Report and Recommendation, he found (and the district court adopted his findings) that Plaintiff's Revised Second Amended Complaint failed to establish a plausible claim of discrimination based upon her psychiatric and physical disabilities under both Title III of the ADA and Section 504 of the Rehabilitation Act. DE 75. Thereafter, this Court found (and the district court adopted) that the Third Amended Complaint similarly failed to allege a claim of discrimination under either statute. DE 168. Plaintiff now reasserts these claims

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 37 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

in the Fourth Amended Complaint. Essentially, Plaintiff alleges numerous instances in which the Hillside Defendants failed to accommodate her psychological and physical disabilities and discriminated against her in violation of the ADA. With the exception of newly added paragraphs 182 and 188, however, Plaintiff's ADA and Rehabilitation claims have been copied verbatim from her Third Amended Complaint, which this Court has already found to be deficient. Paragraphs 182 and 188 allege as follows:

> The Defendants' prevention of the Plaintiff from access to emergency services to evaluate her back for potential injury after the forcible stripping incident constituted a violation of the ADA Act, because they failed to make a reasonable accommodation for her spine condition.

> ....

> The municipal and law enforcement entities are individuals equally liable under this law. PAPD's and EMS' policy or custom of working together to falsely arrest mentally disabled people, without provision for reconsideration, reasonable accommodation or waiver, violated the prohibition in Section 504 on methods of administration that have the effect of subjecting [Plaintiff] to discrimination on the basis of handicap. The NYPD's and DAs policy or custom of ignoring complaints from mental patients is also discriminatory.

Fourth Am. Compl. ¶¶ 182, 188. Even assuming that Plaintiff's spine condition constitutes a disability under the ADA, the addition of these two paragraphs fails to cure the pleading defects of the previous complaints.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of any public place. 42 U.S.C. § 12182(a). "In order to state a claim for violation of Title III ... a plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 94–95 (2d Cir.2012).

Section 504 of the Rehabilitation Act provides in pertinent part that: "No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his [or her] handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794; *see* *Bryant v. New York State Educ. Dept.,* 692 F.3d 202, 216 (2d Cir.2012). Section 504 is narrower than the ADA in that its provisions apply only to programs receiving federal financial assistance. *McInerney v. Rensselaer Polytechnic Inst.,* 977 F.Supp.2d 119, 125 (N.D.N.Y.2013). "To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability."

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 38 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

*Bryant,* 692 F.3d at 216. The ADA and Section 504 provide similar protections to individuals with disabilities and the merits of such claims are generally considered together. *McGugan,* 752 F.3d at 233 n. 4 (noting that claims under both statutes are generally treated identically).

**\*16** The Court assumes for purposes of this motion, as it did with regard to the prior two motions to dismiss, that Plaintiff has satisfied the first element of both statutes, to wit, Plaintiff is disabled by virtue of her psychiatric disabilities (depression, post traumatic stress disorder caused by a history of rape, a history of self-injury and suicidal behavior) and physical disabilities (from a proctocolectomy and spine surgery). The Court further assumes, as it did before, that the defendant Hospital is a place of public accommodation and that defendant Schulman (the Executive Director of the Hospital and a potential policy maker) and the Hospital are potentially subject to liability under the ADA. Under both statutes, however, Plaintiff must additionally show that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants by reason of [her] disabilities." [4] *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003) (citation omitted).

Even assuming the truth of Plaintiff's allegation that she was denied access to emergency services to evaluate her back for potential injury after the stripping incident, Plaintiff fails to show how the failure to accommodate was discriminatory. In other words, Plaintiff fails to allege that she was treated differently *because of* her alleged disability. Instead, she is simply challenging the adequacy of the services she received. Such allegations are insufficient to state a claim for discrimination under either statute. *See* *Goonewardena v. N. Shore Long Island Jewish Health Sys.,* No. 11 CV 2456, 2012 WL 7802351, at \*6 (E.D.N.Y. Nov.5, 2012) ("The Second Circuit Court of Appeals and courts within the Circuit have repeatedly held that [ADA and Rehabilitation Act] claims challenging the quality of care provided to disabled persons [are] not ... cognizable discrimination claim[s] absent an allegation that better care is provided, or more easily accessible, to the nonhandicapped"). Accordingly, having failed to provide any specific allegations in the Fourth Amended Complaint that would permit a plausible inference that Plaintiff has suffered from disability discrimination, Plaintiff's claims under the ADA and the Rehabilitation Act fail.

That is not the end of the Court's inquiry, however. In Plaintiff's opposition to the instant motion, Plaintiff raises a new theory of liability. Citing the Second Circuit's recent decision in *McGugan,* Plaintiff argues that the Hillside Defendants discriminated against her in violation of the ADA and the Rehabilitation Act by forcing hospitalization and medicating her for "reasons having no relevance to medical appropriateness," DE 190 at 13, since their own medical assessment indicated that Plaintiff did not pose a substantial risk of harming herself or others, *id.* at 16. Instead, Plaintiff argues that "the Hospital's decisions to continue Plaintiff's forced hospitalization *and* medication were motivated by considerations (monetary gain) ...

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 39 of 64

that were unrelated to proper medical decision-making about Plaintiff's case." *Id.* at 15.

**\*17** Because this new theory of liability is not asserted in the actual pleading, the Court could decline to consider it on that basis alone. *See* 🚩*Shah,* 252 F. App'x at 366; *Brenner,* 821 F.Supp.2d at 538. Even assuming *arguendo* that such a claim had been pled, however, it would still fail as a matter of law.

In *McGugan,* the Second Circuit examined whether McGugan "was subject to 'discrimination' by reason of her disability" when, in following the state law governing civil commitment, a hospital concluded that McGugan "posed a risk of serious harm based on stereotyping persons who suffer from mental illness, rather than making a medically appropriate, individualized assessment." 🚩752 F.3d at 232. The court rejected this argument, explaining that while McGugan may have alleged medical malpractice, she had not alleged discrimination. 🚩*Id.* at 232–33. Instead, the Court explained, "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if she alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of the inquiry in question." 🚩*Id.* at 234. Plaintiff latches onto this language in her brief and argues that here, the Hospital's decision to commit her violated the ADA and the Rehabilitation Act because it was based on unrelated and inappropriate factors, i.e., monetary gain. The language relied upon by Plaintiff, however, does not mean that a plaintiff pleads disability discrimination

anytime it is alleged that a defendant was motivated by *any* improper considerations. To the contrary, a claim under the ADA or the Rehabilitation Act is actionable only where a plaintiff can show that she was discriminated against *based on her disability. See* 🚩*id.* at 232 (" '[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's *handicap* is unrelated to, and thus improper to consideration of, the services in question.' ") (quoting 🚩*United States v. Univ. Hosp.,* 729 F.2d 144 (2d Cir.1984) (emphasis added)). Here, Plaintiff's purported claim that the Hospital committed her for financial reasons does not plausibly allege discrimination based upon disability. Accordingly, the undersigned reports and recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims pursuant to Title III of the ADA and Section 504 of the Rehabilitation Act be granted.

## 4. Remaining Claims Under Federal Law

Despite counsel's representation that the new pleading would narrow Plaintiff's claims, the Fourth Amended Complaint asserts the same verbatim HIPAA allegations as did the Third Amended Complaint. *Compare* Fourth Am. Compl. ¶¶ 94–95 *with* Third Am. Compl. at 36–37. This is so despite the fact that in her opposition papers to the last motion to dismiss, Plaintiff conceded that there is no private cause of action under HIPAA and stated that she had dropped this claim. *See* DE 168 at 41; *see also* 🔶*Mallgren v. Burkholder,* —— F.Supp.3d ——, No. 14–CV–2189, 2014 WL 5025900, at *4 (E.D.N.Y. Oct. 8, 2014), at *4 ("HIPAA regulations are enforceable by

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 40 of 64
Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...
2015 WL 1443254

the Secretary of Health and Human Services, and they do not provide a private cause of action through which individuals can enforce its provisions."). Accordingly, the undersigned reports and recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims under HIPAA be granted.

### 5. State Claims

**\*18** "[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims, if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction and the complaint's federal claims are dismissed in the litigation's 'early stages.' " *Pelt v. City of New York,* No. 11–CV–5633, 2013 WL 4647500, at *19 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks and citations omitted); *see Choe v. Fordham Univ. Sch. of Law,* 81 F.3d 319, 319 (2d Cir.1996) (holding it is clear a district court holds discretion to "decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed"); *see also* 29 U.S.C. § 1367(c)(3). Moreover, while a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity —will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (internal quotation marks and citation omitted).

Here, the Hillside Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. In response, Plaintiff agrees that the Court should not exercise supplemental jurisdiction over her state claims if the Court finds that there are no viable federal claims. Accordingly, in light of the recommended dismissal of all claims over which it has original jurisdiction, *see infra,* the undersigned reports and recommends that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### B. United

The Fourth Amended Complaint adds United as a defendant, asserting that United violated (1) N.Y. General Business Law § 349 by engaging in deceptive practices in administering its mental health insurance policies, Fourth Am. Compl. ¶¶ 235–237; and (2) Section 1983 by conspiring with the Hillside Defendants to deprive Plaintiff of her constitutional rights. The Court begins with an analysis of Plaintiff's federal claim.

Plaintiff alleges that during her 18–day confinement at the Hospital, she called United to cancel her medical coverage in an effort to provide the Hospital with a motivation to discharge her. Fourth Am. Compl. ¶ 22. United, however, advised Plaintiff that it could not terminate her coverage unless she personally visited their office, but the Hospital would not let her go. *Id.* As a result, the Hospital detained Plaintiff for the maximum number of days for which United agreed to pay and discharged

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 41 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

her on the last reimbursable day. *Id.* ¶ 24. The one paragraph alleging specific misconduct by United provides as follows:

> United[ ], by refusing to terminate the Plaintiff's policy at her urgent request, participated in the conspiracy to falsely imprison her, discriminate against her on the basis of disability, and deprive her of her 1st, 4th and 14th amendment rights. This constituted, at a minimum, negligence, [United] continues to violate her privacy today by stating that it has the right to share any of the information that it had obtained about her health and psychiatric treatment (her "health information"), without notice or due process, and by failing to respond to her request for a list of the parties that have received her health information to date from [United].

**\*19** *Id.* ¶ 157.

In her opposition brief, Plaintiff concedes that United is a private entity and not a state actor. However, Plaintiff argues that she pleads a valid 🚩Section 1983 claim against United because she alleges that United conspired with the Hillside Defendants to keep her detained against her will. DE 198 at 4. Plaintiff is mistaken.

To support a claim against a private party on a 🚩Section 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." 🚩*Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). Because the Court has already found that there are no allegations in the Fourth Amended Complaint plausibly suggesting that the Hillside Defendants were state actors, Plaintiff's conspiracy claims against United must necessarily fail. Moreover, aside from her conclusory allegations that United and the Hillside Defendants "participated in the conspiracy to falsely imprison her," Fourth Am. Compl. ¶ 157, Plaintiff alleges no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate her constitutional rights. In this regard, Plaintiff's suggestion that United must have conspired with the Hillside Defendants to illegally detain her because United provided coverage for her treatment—which it was contractually obligated to do—despite Plaintiff's request to terminate her plan is not plausible in the absence of any factual allegations supporting such an agreement. In addition, Plaintiff's allegations that United continues to violate her right to privacy by claiming it can share her personal information without notice and by failing to advise her which parties have already received her health information suggest misconduct engaged in by United alone and do not allege a conspiracy with a state actor. Accordingly, the undersigned reports and

Case 8:24-cv-00027-BKS-DJS  Document 14  Filed 02/29/24  Page 42 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

recommends that United's motion to dismiss Plaintiff's 🚩Section 1983 claims be granted. [5]

## C. The City of New York

The Fourth Amended Complaint adds the City of New York as a defendant. The City has moved to dismiss the complaint. Plaintiff has submitted no opposition to the City's motion. [6]

The Fourth Amended Complaint alleges that members of the New York City Police Department ("NYPD") failed to investigate Plaintiff's alleged mistreatment while she was in the custody of the Hillside Defendants. Fourth Am. Compl. ¶ 204. Even if Plaintiff's allegations regarding the NYPD's failure to investigate her complaints are taken as true, they are not sufficient to create liability under 🚩Section 1983. The Second Circuit has held that an individual does not hold a " 'legitimate claim of entitlement' to a police investigation." *Harrison v.* 🚩*County of Suffolk,* 607 F.3d 31, 35 (2d Cir.2010) (quoting 🚩*Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)). Because Plaintiff is not entitled to a police investigation with regards to complaints she may have made, there is no constitutional violation for which the City of New York may be found municipally liable. Moreover, to state a 🚩Section 1983 claim against a municipality, a plaintiff must allege that a governmental custom, policy, or usage caused her injury. *See* 🚩*Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d

611 (1978); *see also* 🚩*Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir.2012). Here, the Fourth Amended Complaint sets forth no facts supporting a municipal policy which caused a violation of Plaintiff's constitutional rights. *See* 🚩*Gordon v. City of New York,* No. 10–CV–5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012)* ("[M]ere conclusory references to a policy or custom, with no supporting facts, will not suffice to state a claim of 🚩§ 1983 municipal liability."). Accordingly, the undersigned reports and recommends that the City's motion to dismiss Plaintiff's 🚩Section 1983 claims be granted.

## OBJECTIONS

**\*20** A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 🚩28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010); 🚩*Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); 🚩*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

Dated: January 12, 2015.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 1443254

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 43 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

# Footnotes

1   The Fourth Amended Complaint also names several other defendants in the caption, including the Port Authority of New York and New Jersey, NYPD Detective Michael T. O'Brien, NYPD Lieutenant Antoinette Petruzzello, T.C. Carbonaro, Lt. Michelle Serrano, and several John Doe defendants. There is no indication in the docket sheet that any of these defendants have been served or have appeared in the action.

2   New York Mental Hygiene Law § 9.39(a) provides that a hospital may receive and retain a patient alleged to have a mental illness for up to fifteen days "only if a staff physician of the hospital upon examination of such person finds that such person" has "a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and *which is likely to result in serious harm to himself or others*" and "such finding is confirmed after examination by another physician [within forty-eight hours]." N.Y. Mental Hyg. L. § 9.39(a) (emphasis added). If the patient does not agree to remain, she may be retained involuntarily beyond the 15–day period through medical certification procedures described in the statute. *Id.* §§ 9.27, 9.39(b).

3   This Court has also already found that the allegation that the Hillside Defendants received public funds does not demonstrate that they are state actors. *See* February 12, 2014 Report and Recommendation at 29 (citing *White v. St. Joseph's Hosp.,* 368 F. App'x 225, 226 (2d Cir.2010)).

4   Under the Rehabilitation Act, Plaintiff has the added burden of identifying a federally funded benefit or program from which she was denied benefits. *See* *Bryant,* 692 F.3d at 216.

5   Because the undersigned reports and recommends that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court does not address Plaintiff's state law claim against United.

6   According to the City, Detective Michael T. O'Brien and Lieutenant Antoinette Petruzzello have not been served in this action and, therefore, they are neither represented by the Office of the Corporation Counsel nor is the City's motion made on their behalf. The City notes, however, that its arguments apply equally to Detective Michael T. O'Brien and Lieutenant Antoinette Petruzzello in the event these officers are properly served at some future time.

Case 8:24-cv-00027-BKS-DJS    Document 14    Filed 02/29/24    Page 44 of 64

Andersen v. North Shore Long Island Jewish Healthcare..., Not Reported in...

2015 WL 1443254

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 5429675
Only the Westlaw citation
is currently available.
United States District Court, E.D. New York.

Ryszard HEJMEJ, Bozena Hejmej,
and Tibor Farkas, Plaintiffs,
v.
PECONIC BAY MEDICAL CENTER
and Northwelll Health, Defendants.

17-cv-782 (JMA)(SIL)
|
Signed July 5, 2022

**Attorneys and Law Firms**

David John Hommel, Jr., Eric Baum, Andrew Rozynski, Eisenberg & Baum, LLP, New York, NY, for Plaintiffs Ryszard Hejmej, Bozena Hejmej.

David John Hommel, Jr., Andrew Rozynski, Eisenberg & Baum, LLP, New York, NY, for Plaintiff Tibor Farkas.

Roy W. Breitenbach, Harris Beach PLLC, Uniondale, NY, Daniel Robert Lecours, Harris Beach PLLC, Albany, NY, for Defendants.

**REPORT AND RECOMMENDATION**

STEVEN I. LOCKE, United States Magistrate Judge:

**\*1** Presently before the Court in this civil rights action, on referral from the Honorable Joan M. Azrack for Report and Recommendation, are: (i) Defendants' Peconic Bay Medical Center (the "Hospital") and

Northwell Health ("Northwell" and together with the Hospital, "Defendants") motion for summary judgment ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [78]; and (ii) Plaintiffs' Ryszard Hejmej ("Ryszard"), Bozena Hejmej ("Bozena," together with Ryszard, the "Hejmejs"), and Tibor Farkas ("Farkas," together with the Hejmejs, "Plaintiffs") cross-motion for summary judgment ("Plaintiffs' Motion" or "Pl. Mot."). *See* DE [83]. Both motions are brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Def. Mot.; Pl. Mot.

By way of Complaint dated February 10, 2017, amended on September 21, 2019, Plaintiffs commenced this action against Defendants for violations of their rights under: (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; (2) Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*; (3) Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 *et seq.*; and (4) various sections of the New York Human Rights Law. *See* Complaint ("Compl."), DE [1]; Amended Complaint ("AC"), DE [41]. Of particular relevance as explained below, Plaintiffs' remaining claims are for injunctive relief and emotional distress damages. *See id.* For the reasons set forth herein, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

## I. BACKGROUND

### A. The Parties

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements. Except where indicated, these facts are not in dispute.

Plaintiffs are deaf and primarily communicate using sign language, though all are capable of communicating through lip-reading, written notes, text messages, and gesturing. *See* Defendants' Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1"), DE [78-50], ¶¶ 12-19, 37-44, 119-27; Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1"), DE [83-46], ¶¶ 1-17. Plaintiffs can each understand and read English. *See id.* The Hejmejs are married and Farkas is a friend of the Hejmejs. *Id.* Defendant Northwell operates the Hospital, where Plaintiffs were treated at different points between 2014 and 2018. *See generally* Def. 56.1; Pl. 56.1.

### B. The Hospital's Policies and Practices Regarding Deaf Patients

The Hospital's policies require that: (1) Hospital staff offer deaf patients and their companions auxiliary aids and interpreting services at each step of their care; (2) such offers – and any refusals – must be documented on a specific form and placed in that patient's medical records; and (3) all Hospital employees are permitted to offer and provide these interpreting services. *See* Pl. 56.1 ¶¶ 18-35.

**\*2** Pursuant to Hospital policy that was in effect between 2014 and 2016, deaf patients were to be provided with qualified sign language interpreting services through a video remote interpreting ("VRI") device provided by a company known as TransPerfect. *See* Def. 56.1 ¶ 2. When this policy was first implemented, the Hospital's VRI devices were available at all times. *Id.* at ¶ 3. The Hospital gradually increased its number of available VRI devices which Hospital physicians and clinical employees used to access sign language interpreters when needed to communicate with deaf patients. *Id.* In situations where VRI is not available, the Hospital also has the ability to provide in-person sign language interpreting services. *Id.* at ¶ 5.

After Northwell took over the Hospital's operations in 2017, it implemented the current iteration of its "People Who Are Deaf or Hard of Hearing" Policy (the "Policy") in or about July 2017. *See id.* at ¶ 6. Pursuant to the Policy, each deaf or hard of hearing patient is informed of his or her right to free interpreting services, and each Hospital staff member is required to document offers of interpreting services, and each offer's acceptance or refusal. *Id.* at ¶ 7. In early 2018, the Hospital upgraded its VRI offerings to use an iPad application through its vendor – a company known as "Language Line" – for interpreting all languages, including American Sign Language ("ASL"). *Id.* at ¶ 8. During all relevant times, the Hospital trained its clinical staff regarding the provision of sign language interpreting services to deaf patients, including annual education with regard to the VRI systems. *Id.* at ¶ 11.

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 47 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

## C. **Plaintiffs' Interactions with the Hospital**

As noted above, Plaintiffs sought medical treatment from the Hospital multiple times between 2014 and 2018. *See generally* Def. 56.1; Pl. 56.1. Each Plaintiff's visit(s) to the Hospital is summarized below.

### 1. Bozena's Medical Treatment at the Hospital

Bozena went to the Hospital's Emergency Department ("ED") with Ryszard on February 14, 2014, in order to obtain a medically-advised CT scan after falling and hitting her head. *See* Def. 56.1 ¶¶ 20-21. Upon arriving at the ED, the Hejmejs identified themselves as deaf to the Hospital's registrar. *Id.* at ¶ 22. Bozena was then interviewed and assessed by triage nurse, Kim Nazario, who indicated in her triage note that "Pt. needs hearing impaired interpreter." *Id.* at ¶ 23. The Hejmejs next encountered the ED's floor nurse, Dennis Cacciatore, with whom Bozena communicated entirely via writing. *Id.* at ¶ 25.

Bozena was next examined by Physician's Assistant Lyndsie Watkins ("PA Watkins"), who obtained a detailed medical history from her. *Id.* at ¶ 26. The ED's attending physician, Dr. Robert Ehlers, met with the Hejmejs and – without offering ASL interpretation – apprehended that she had "vomited earlier in the day, the pain medication she was taking, and her history of back pain." *Id.* at ¶¶ 28-30. Bozena then underwent a CT scan. *Id.* After the scan, she was treated and discharged. *Id.* at ¶¶ 32-33. Bozena has not returned to the Hospital as a patient since this visit. *Id.* at ¶¶ 34-35.

### 2. Ryszard's Medical Treatment at the Hospital

Ryszard was a patient at the Hospital on: April 6-7, 2016; June 15, 2016; June 16-17, 2016; July 2-3, 2016; July 10-11, 2016; and July 30-31, 2016. *See* Pl. 56.1 ¶ 42. Bozena accompanied him for all of these visits, while Farkas accompanied the Hejmejs during Ryszard's April 2016 visit and for his first July 2016 visit. *Id.* at ¶¶ 43-44. Their experiences were as follows:

- **April 6-7, 2016:** On April 6, 2016, Ryszard came to the Hospital's ED complaining of high blood pressure and chest tightness, accompanied by Bozena and Farkas. Def. 56.1 ¶¶ 45-46; Pl. 56.1 ¶ 46. Plaintiffs contend that, upon arrival, Ryszard "informed the front desk that he is deaf and requested an interpreter, and later repeated this request to a nurse and three other Hospital employees." Pl. 56.1 ¶ 47. The parties disagree whether Ryszard requested interpretation services but agree that they were not provided to him. *See* Def. 56.1 ¶¶ 55-56; Pl. 56.1 ¶ 50. PA Watkins obtained Ryszard's medical history, including specific information regarding his medication, symptoms, and concerns, while attending ED physician Dr. Jeffrey Cangelosi obtained from Ryszard "a description of a 20+ minute episode of chest pain radiating down both arms." Pl. 56.1 ¶¶ 51, 53. Ryszard stayed at the Hospital's telemetry unit overnight for observation before being discharged the next day. *Id.* at ¶¶ 57-58.

**\*3** • **June 15, 2016:** Accompanied by Bozena and Farkas, Ryszard arrived at the ED complaining of high blood pressure. Def. 56.1 ¶¶ 59-60. Both the ED's triage nurse and the floor nurse communicated with him via lip-reading. *Id.* at ¶¶ 61-62. Dr. Cangelosi obtained information from Ryszard regarding his symptoms, complaints, and previous medical visits without the use of any interpretation services. *Id.* at ¶¶ 63-66. Ryszard was treated and discharged after nearly three-hours. *Id.* at ¶¶ 67-68.

• **June 16-17, 2016:** Accompanied by Bozena, Ryszard arrived at the ED on June 16, 2016 for elevated blood pressure. *Id.* at ¶¶ 69-70. Ryszard again informed the front desk that he was deaf and requested an interpreter. Pl. 56.1 ¶¶ 65, 66. Both the floor nurse and Dr. Cangelosi – who had seen Ryszard before – communicated with him without the use of any interpreting services. *See* Def. 56.1 ¶¶ 72-74. Ryszard was treated and discharged after approximately three hours. *Id.* at ¶¶ 75, 78.

• **July 2-3, 2016:** Accompanied by Bozena and Farkas, Ryszard arrived at the ED on July 2, 2016 for anxiety caused by high blood pressure. *Id.* at ¶¶ 79-80. According to Plaintiffs, Ryszard requested interpreting services, and his intake notes from that night indicate his deafness. *See* Pl. 56.1 ¶¶ 75-76. PA Watkins – without an interpreter, according to Plaintiffs – obtained detailed medical information from Ryszard "including that he was anxious and agitated even after taking

clonazepam, and that his blood pressure was 200/100 when measured at home." Def. 56.1 ¶¶ 82-83. Ryszard was treated and discharged after approximately three hours. *Id.* at ¶¶ 87-88.

• **July 10-11, 2016:** Accompanied by Bozena, Ryszard sought medical treatment from the ED for anxiety caused by chest pain and elevated blood pressure. *Id.* at ¶¶ 89-90. Ryszard was admitted to the Hospital's telemetry unit to obtain a cardiology consultation and for observation overnight. *Id.* at ¶ 94. Ryszard requested that the floor nurse, Niquela Durham ("Durham") use VRI to communicate with him, but the VRI device malfunctioned. *Id.* at ¶ 95. Defendants contend that Durham told Ryszard that "she could order a live interpreter, which would take approximately an hour" but that Ryszard stated that "that he would use pen and paper to communicate with Hospital staff overnight," Def. 56.1 ¶¶ 96-100, while Plaintiffs assert that Ryszard preferred to wait for the live interpreter. *See* Pl. 56.1 ¶¶ 88-89. Ryszard was treated and discharged the next day. *See* Def. 56.1 ¶¶ 105-06.

• **July 30-31, 2016:** The Hejmejs came to the ED on July 30, 2016, again for Ryszard's elevated blood pressure, having run out of medication two days earlier. *Id.* at ¶¶ 107-08. According to Plaintiffs, Ryszard requested an interpreter from the front desk nurse but never received one. Pl. 56.1 ¶ 99. Notwithstanding Defendants' contention that Hospital staff was capable of communicating with Ryszard during his visit, *see* Def. 56.1 ¶¶ 109-13, 115,

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 49 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

the parties do not dispute that Ryszard was never provided with a sign language interpreter during his visit. *See* Pl. 56.1 ¶ 101. Ryszard was treated and discharged less than two hours later. *See* Def. 56.1 ¶¶ 116-17.

### 3. Farkas's Medical Treatment at the Hospital

Farkas was a patient at the Hospital on: November 27, 2014; May 1, 2016; May 2, 2016; and April 28-May 3, 2018. *See* Pl. 56.1 ¶ 117. Ryszard accompanied Farkas on some of these visits. *Id.* at ¶ 118. Their experiences were as follows:

**\*4** • **November 27, 2014:** Farkas visited the ED by himself for an undisclosed reason. Pl. 56.1 ¶ 121. The parties agree that, while Hospital staff treated Farkas, he did not receive a sign language interpreter. *Id.* at ¶ 122.

• **May 1, 2016:** Farkas visited the ED by himself complaining of back pain. *Id.* at ¶¶ 129-30. He requested sign language interpreting services, but the Hospital's VRI malfunctioned, and he communicated with Hospital staff via written notes. *Id.* at ¶ 132. While the ED's floor nurse and attending physician communicated with and treated Farkas, *see* Def. 56.1 ¶¶ 133-37, he was not provided with a sign language interpreter. *See* Pl. 56.1 ¶¶ 124, 126. Farkas was treated and released later that day. Def. 56.1 ¶¶ 138-39.

• **May 2, 2016:** Farkas visited the ED by himself the next day complaining of back pain. *Id.* at ¶ 140. Farkas apparently requested, but did not receive, a sign language interpreter. He instead communicated with Hospital staff via written notes. *See* Pl. 56.1 ¶¶ 134-35; Def. 56.1 ¶¶ 142-47. Farkas was treated and released later that day. Def. 56.1 ¶¶ 148, 150.

• **April 28-May 3, 2018:** Farkas was brought to the ED on April 28, 2018, after collapsing and being found unresponsive in a local library. *Id.* at ¶ 151. While Farkas – who was briefly accompanied by Ryszard – could not initially communicate with an interpreter, he apparently spoke with one shortly after admission. *Id.* at ¶¶ 152-54, 174. Farkas met with multiple Hospital staff members regarding his medical issues and communicated with all of them via the Hospital's VRI system. *Id.* at ¶¶ 158-60. Defendants contend that, for an unknown reason, Farkas refused to continue using the Hospital's VRI technology. *Id.* at ¶¶ 161-65. On May 3, 2018, Farkas had a psychiatric consultation and met with the ED's attending physician, communicating through an interpreter. *Id.* at ¶¶ 169-70. After these consultations, Farkas was treated and discharged on May 3, 2018. *Id.* at ¶¶ 173, 175.

• **May 3, 2018:** On May 3, 2018, less than four hours after his discharge, Farkas returned to the ED, allegedly seeking a prescription for Suboxone. *Id.* at ¶ 176. At this time, the ED used a "split flow" process, where one physician served a triage function and examined the patient briefly to determine whether he or she could be designated to the "fast track"

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 50 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

area, used for minor complaints. *Id.* at ¶ 177. The split flow physician determined that Farkas could be sent to the ED's fast track area, where he was then examined and interviewed by a PA via VRI. *Id.* at ¶¶ 178-82. Farkas was thereafter treated and discharged. *Id.* at ¶¶ 183-84.

### D. Procedural History

Based on the above, the Hejmejs commenced this action against Defendants by way of Complaint dated February 10, 2017, asserting claims for violation of their rights under: (1) Title III of the ADA; (2) Section 504 of the Rehabilitation Act; (3) Section 1557 of the ACA; and (4) various sections of the New York Human Rights Law. *See* Compl. Defendants filed their Answer to the Complaint on May 15, 2017, *see* DE [12], and the parties appeared before Judge Azrack for an Initial Conference on June 14, 2017. *See* DE [16]. Discovery commenced thereafter. On September 21, 2019, with Judge Azrack's permission, Plaintiffs amended their Complaint to: (i) correct scrivener's errors; (ii) clarify certain allegations; and (iii) name Farkas as an additional Plaintiff. *See* AC. Defendants filed their Answer to the Amended Complaint on October 14, 2019. *See* DE [43]. Discovery continued until its July 2021 completion. *See* DE [63]. At this point in the litigation, Plaintiffs' only remaining claims are for injunctive relief and emotional distress damages. *See* Compl; AC.

**\*5** On February 4, 2022, the parties filed their respective motions for summary judgment, *see* Def. Mot.; Pl. Mot., which Judge

Azrack referred to this Court for Report and Recommendation on April 29, 2022. *See* April 29, 2022 Electronic Order. On May 19 and May 27, 2022, respectively, the parties submitted supplemental letters addressing the Supreme Court's April 28, 2022 decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ---, 142 S. Ct. 1562, 212 L.Ed.2d 552 (2022), and its impact on the instant motions. *See* DEs [86], [87], [89]. For the reasons set forth below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

### II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See* 🚩⚠️*Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." 🚩*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also* 🚩*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 51 of 64

Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III. DISCUSSION

Plaintiffs allege causes of action under: (1) Title III of the ADA; (2) Section 504 of the Rehabilitation Act; (3) Section 1557 of the ACA; and (4) various sections of the New York Human Rights Law. Applying the standards above, and for the reasons below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

## A. Applicability of *Cummings v. Premier Rehab Keller, P.L.L.C.*

The Court first evaluates whether the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ---, 142 S. Ct. 1562, 212 L.Ed.2d 552 (2022), forecloses Plaintiffs' claims for emotional distress damages in this matter. [1] Defendants contend that *Cummings* is binding on the parties' instant dispute, and precludes Plaintiffs' suit as a matter of law because the only damages they seek are for alleged emotional distress – a category expressly precluded by *Cummings*. *See* DEs [86], [89]. Plaintiffs, on the other hand, assert that – notwithstanding *Cummings* – they "may still seek compensatory damages under federal law" and maintain "federal-question jurisdiction in this courthouse." DE [87].

**\*6** In its recent 6-3 decision, the Supreme Court held that a plaintiff suing under the implied rights of action in the Rehabilitation Act and ACA cannot recover compensatory damages for emotional distress. *See Cummings*, 142 S. Ct. at 1576. The Supreme Court's analysis centered on the fact that both the

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 52 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Rehabilitation Act and ACA were passed pursuant to Congress's powers under the Constitution's Spending Clause and that the "legitimacy of Congress' power" to enact Spending Clause legislation depends upon "whether the recipient [of federal funds] voluntarily and knowingly accepts the terms of that contract." *Id.* at 1570 (internal citation omitted). Indeed, the Supreme Court held that lower courts "may presume that a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the *usual* contract remedies in private suits." *Id.* at 1571 (emphasis in original).

The Court then concluded that because emotional distress damages are not typically available in contract cases, *see id.* at 1571-76, a recipient of federal funds would not have had sufficient notice of its potential liability for such damages when it " 'engaged in the process of deciding whether [to] accept' federal dollars...." *Id.* at 1570-71 (quoting 🚩 *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 2459, 165 L.Ed.2d 526 (2006)). For this reason, the Supreme Court concluded, the plaintiff could not recover damages for the "humiliation, frustration, and emotional distress" she suffered as a result of the defendant's alleged discrimination. *Id.* at 1569 (internal citation omitted).

A review of the *Cummings* decision and Plaintiffs' claims in the case at hand leads the Court to conclude that *Cummings* is both directly applicable to, and binding on this matter. In doing so, the Court rejects Plaintiffs' arguments that *Cummings* should

not be followed because it: (1) was wrongly decided; and (2) does not apply retroactively. *See* DE [87]. Not only will this Court not relitigate a matter so recently decided by the Supreme Court, but it is well-established that where the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." 🚩 *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). The Court thus concludes that the Supreme Court's opinion in *Cummings* is binding on this Court and the case at bar.

## B. Plaintiffs' ADA and Rehabilitation Act Claims

Both parties seek summary judgment on Plaintiffs' ADA and Rehabilitation Act claims. *See generally* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem."), DE [78-51]; Plaintiffs' Brief in Support of Motion for Summary Judgment ("Pl. Mem."), DE [83-47]. Both the ADA and Rehabilitation Act "prohibit discrimination against qualified disabled individuals by requiring that they receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations," and claims brought under both acts are typically analyzed in tandem. *See* 🚩 *Schoengood v. Hofgur LLC*, No. 20-cv-2022, 2021 WL 1906501, at *3 (E.D.N.Y. May 12,

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 53 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

2021) (quoting *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). In order to do so, courts within the Second Circuit employ a three-part test, through which a plaintiff must demonstrate that: (1) he or she is a "qualified individual" with a disability; (2) the defendants are subject to the ADA and Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against, by reason of a plaintiff's disabilities. *Id.* at 85.

**\*7** In order to satisfy the third prong and establish discrimination, a plaintiff may rely on one of three theories of liability: (1) "disparate treatment"; (2) "disparate impact"; or (3) "failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). In this context, defendants have a presumptive obligation to provide "reasonable accommodations" to individuals with disabilities, and a covered entity's failure to provide such accommodations will be sufficient to satisfy the abovementioned third prong. *See* 42 U.S.C. § 12182(b)(2)(a)(ii); *Powell*, 364 F.3d at 85. The question of whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis. *See* *Schoengood*, 2021 WL 1906501, at \*3 (citing *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999)).

Further, while Title III of the ADA allows for injunctive relief, but not damages, *see* *Powell*, 364 F.3d at 86, the Rehabilitation Act allows for the recovery of damages,

provided that the plaintiff shows that the statutory violation resulted from "deliberate indifference" to the rights secured by that statute. *See* *Schoengood*, 2021 WL 1906501, at \*3 (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001)). A plaintiff must also demonstrate that defendants received federal funding in order to establish a violation under the Rehabilitation Act. *Id.* (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)); *see also* *Doe v. Trustees of Columbia Univ. in City of New York*, No. 21-cv-1697, 2021 WL 1253974, at \*4 (S.D.N.Y. Apr. 1, 2021).

Applying these standards and the *Cummings* opinion to the facts at hand, the Court concludes that Defendants' Motion should be granted as to Plaintiffs' ADA and Rehabilitation Act causes of action, and these claims should be dismissed with prejudice. Initially, the parties do not dispute that Plaintiffs are "qualified individuals" with disabilities under the Rehabilitation Act and ADA, *see* AC ¶¶ 57, 71, and Defendants both "own[ed], lease[d], and/or operate[d] a place of public accommodation within the meaning of the ADA" and "have each been programs or activities receiving federal financial assistance pursuant to [the Rehabilitation Act]." *Id.* at ¶¶ 58, 72. Thus, the issue in dispute is whether Plaintiffs have sufficiently established that Defendants discriminated against them because of their disabilities during any one or more of their visits to the Hospital. The Court need not reach this issue, however, because Plaintiffs are precluded – by the ADA's text and the Supreme Court's ruling in *Cummings* – from seeking compensatory damages for alleged emotional distress. *See* *Milhouse v. Hilton*

*Garden Inn Employees*, No. 22-cv-2934, 2022 WL 1749844, at \*7 (S.D.N.Y. May 31, 2022) (citing 📙 *Powell*, 364 F.3d at 86); *Cummings*, 142 S. Ct. at 1576.

Beginning with Plaintiffs' ADA claim, the only relief which they could seek would be injunctive relief, as private individuals "cannot recover [compensatory] damages" under Title III of the ADA. *Milhouse*, 2022 WL 1749844, at \*7 (quoting 📙 *Powell*, 364 F.3d at 86). Initially, the parties do not dispute that Ryszard withdrew his request for injunctive relief at the initial summary judgment briefing stage. *See generally* Pl. Mot. Moreover, a review of the evidence before the Court reveals that both Bozena and Farkas lack standing to pursue injunctive relief under the ADA, as neither has established that they intend to return to the Hospital for medical treatment, *see* Def. 56.1 ¶¶ 35, 118, 120 – a crucial element of an injunctive relief claim. *See Krist v. Beth Israel Med. Ctr.*, No. 17-cv-1312, 2021 WL 4442943, at \*9 (S.D.N.Y. Sept. 28, 2021) (citing 📙 *Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 599 (S.D.N.Y. 1995)) (finding a plaintiff's "mere speculation" that she may be subject to future harm by merely returning to the defendant hospital insufficient to confer Article III standing). For these reasons, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' ADA cause of action, and that this claim be dismissed with prejudice.

**\*8** Turning next to Plaintiffs' Rehabilitation Act claim, the Court concludes that Defendants' Motion should be granted as to this cause of action, and that it too should be dismissed with prejudice. As a threshold matter, the *Cummings* decision squarely applies to Plaintiffs' Rehabilitation Act cause of action. Plaintiffs undisputedly seek compensatory damages only for alleged emotional distress, *see* Pl. 56.1 ¶¶ 166-71 – the very type of damages precluded by the Supreme Court in the context of Rehabilitation Act claims. *See Cummings*, 142 S. Ct. at 1576. For this reason, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' Rehabilitation Act cause of action, and that it be dismissed with prejudice. In reaching this conclusion, the Court rejects Plaintiffs' arguments that, notwithstanding the above recommendations, they are nevertheless entitled to: (i) expectation damages; (ii) nominal damages; and (iii) damages for "dignitary harm." *See* DE [87].

Plaintiffs base their first counterargument – that they are entitled to "expectation damages" on: (1) the *Cummings* court's conclusion that Defendants are subject "to those remedies traditionally available in suits for breach of contract," *Cummings*, 142 S. Ct. at 1574; (2) the notion that patients who arrive at a hospital for treatment "expect that they will be able to communicate with their healthcare providers" about their current medical conditions, DE [87] at 5; and (3) a recent post-*Cummings* decision – 📙 *Montgomery v. District of Columbia*, No. 18-cv-1928, 2022 WL 1618741, at \*25 (D.D.C. May 23, 2022) – where a district court outside of the Eastern District of New York allegedly "confirmed the availability of such damages." DE [87] at 5. This argument fails in its entirety based on a misunderstanding of *Cummings*. The Supreme Court has precluded an award of emotional distress damages based on the expectations of Defendants' contractual

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 55 of 64

relationship with the federal government when accepting federal funds. *See Cummings*, 142 S. Ct. at 1571. According to the Court, that contractual relationship does not give rise to an expectation of emotional distress damages claimed by Defendants' patients. *Id.* at 1576. As a result, none can be claimed. This is distinguished from the putative contractual relationship between the parties here. Plaintiffs are not seeking damages based on a breach of contract in this case, which might otherwise lead to expectation damages. Rather, they are seeking emotional distress damages based on a federal statute, namely the Rehabilitation Act, which *Cummings* precludes. *See Cummings*, 142 S. Ct. at 1576.

Moreover, Plaintiffs' reliance on 🚩*Montgomery* is misplaced. Not only is 🚩*Montgomery* not binding on this Court, but significant factual distinctions exist. In 🚩*Montgomery*, a mentally ill plaintiff was interrogated multiple times in connection with a murder investigation, where law enforcement not only failed to accommodate his disabilities, but took advantage of them to elicit incriminating statements, leading to the plaintiff spending five-and-a-half years in prison awaiting trial. *See* 🚩*Montgomery*, 2022 WL 1618741, at \*1-6. As a result of his civil lawsuit, the court awarded the plaintiff damages based on "the opportunity he lost when he was denied the ability to meaningfully access and participate in his interviews." 🚩*Id.* at \*25. Not only are these facts drastically different from the facts at hand, but even if this Court were to adopt the 🚩*Montgomery* court's non-binding decision, Plaintiffs here have offered no evidence or authority upon

which the Court could base a decision that they should be awarded any contract-based damages for their non-compensable injuries. For these reasons, this first counterargument fails.

The Court similarly rejects Plaintiffs' argument that they are entitled to nominal damages. Plaintiffs' alleged entitlement is three-pronged and based on: (i) the Rehabilitation Act's incorporation of Title VI's remedies (one of which is nominal damages); (ii) "longstanding contract-law principles"; and (iii) Supreme Court precedent (specifically 🚩*Uzuegbunam v. Preczewski*, 592 U.S. ---, 141 S. Ct. 792, 809, 209 L.Ed.2d 94 (2021)). *See* DE [87] at 8. Defendants counter that, in the wake of *Cummings*, Plaintiffs "cannot salvage" their Rehabilitation Act claim "merely by recasting their request for relief as seeking nominal damages." DE [86] at 2. The Court agrees. Indeed, the injuries at the heart of Plaintiffs' claims amount to non-compensable emotional distress. This Court will not – and frankly, cannot – permit an award of damages, regardless of amount, where doing so would directly contradict a Supreme Court ruling. For this reason, the Court rejects Plaintiffs' second counterargument.

**\*9** Finally, the Court rejects Plaintiffs' contention that they are entitled to damages for "dignitary harm" sustained as a result of Defendants' alleged discrimination. Plaintiffs offer no post-*Cummings* authority to support their argument that compensatory damages for "dignitary harm" are distinct from the emotional distress damages precluded by *Cummings*. *See Cummings*, 142 S. Ct. at 1576. Moreover, Plaintiffs have failed to demonstrate that damages for "dignitary harm"

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 56 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

fall within the ambit of the "usual contract remedy" damages deemed recoverable by the Supreme Court. *See id.* at 1571. The Court thus rejects Plaintiffs' third counterargument and, for the reasons set forth above, respectfully recommends that: (i) Defendants' Motion be granted as to Plaintiffs' ADA and Rehabilitation Act causes of action; (ii) Plaintiffs' Motion be denied as to these claims; and (iii) Plaintiffs' ADA and Rehabilitation Act claims be dismissed with prejudice.

## C. **Plaintiffs' ACA Claim**

Both parties next seek summary judgment on Plaintiffs' ACA cause of action. *See generally* Def. Mem.; Pl. Mem. Section 1557 of the ACA provides that no individual shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." ⚐ 42 U.S.C. § 18116(a). ACA Section 1557 claims are typically analyzed identically to Rehabilitation Act Section 504 claims. *See Vega-Ruiz v. Montefiore Med. Ctr.*, No. 17-cv-1804, 2019 WL 3080906, at *3, n. 3 (S.D.N.Y. Jul. 15, 2019). Nevertheless, the regulations implementing the ACA and the Rehabilitation Act differ. *See Fantasia v. Montefiore New Rochelle*, No. 19-cv-11054, 2022 WL 294078, at *7 (S.D.N.Y. Feb. 1, 2022). Specifically, ACA regulations require an entity operating covered health programs or activities to "take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in such programs or activities, in accordance with" certain ADA regulations.

45 C.F.R. § 92.102(a); *accord* ⚐ *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 65-66 (2d Cir. 2021) (*per curiam*).

Under those ADA regulations, a covered entity must "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary." 28 C.F.R. § 35.160(b)(2). To afford an individual "primary consideration" means the individual's choice of auxiliary aid must be honored unless the entity "can demonstrate that another equally effective means of communication is available or that the aid or service requested would fundamentally alter the nature of the program, service, or activity or would result in undue financial and administrative burdens." *Fantasia*, 2022 WL 294078, at *7 (quoting *Hernandez v. N.Y.S. Bd. of Elections*, 479 F. Supp. 3d 1, 12 (S.D.N.Y. 2020)). Healthcare providers may not "rely on an adult accompanying an individual to interpret or facilitate communication," with two presently inapplicable exceptions. *See Fantasia*, 2022 WL 294078, at *7 (quoting 28 C.F.R. § 35.160(c)(2)(ii)).

Applying these standards, the Court again concludes that Plaintiffs have failed to provide the Court with evidence to either defeat Defendants' Motion or support their motion for summary judgment. Initially, as explained in detail above, the Supreme Court's holding in *Cummings* explicitly precludes an individual suing under the ACA's implied right of action from seeking emotional distress damages. *See Cummings*, 142 S. Ct. at 1576. Here, Plaintiffs' ACA cause of action seeks solely compensatory damages for emotional distress caused by Defendants' alleged discrimination,

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 57 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

and thus fails as a matter of law. For this reason, the Court respectfully recommends that: (i) Defendants' Motion be granted as to Plaintiffs' ACA cause of action; (ii) Plaintiffs' Motion be denied as to this claim; and (iii) Plaintiffs' ACA claim be dismissed with prejudice for failure to state a claim.

### D. **Plaintiffs' State Law Claim**

**\*10** Having determined that Plaintiffs' federal claims should be dismissed, the Court recommends declining to exercise supplemental jurisdiction over their claim brought pursuant to the New York Human Rights Law. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)); *see also Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at \*8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).

Indeed, in the interest of comity, the Second Circuit has instructed that, absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497, 2007 WL 1703914, at \*5 (W.D.N.Y. June 8, 2007), *aff'd sub nom. Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122

(2d Cir. 2008) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159, 1159, 106 S. Ct. 2278, 2278, 90 L.Ed.2d 721 (1986)); *see also City of Chi. v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534, 139 L.Ed.2d 525 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L.Ed.2d 720 (1988)) ("[T]he statute reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a 'federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.' "). Accordingly, the Court respectfully recommends that Plaintiffs' claim brought pursuant to the New York State Human Rights Law be dismissed without prejudice and with leave to refile in the appropriate forum.

### IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

### V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 58 of 64

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

the District Court's order. *See* 🚩28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); 🚩*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); 🚩*Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 5429675

## Footnotes

1     The Court acknowledges that the parties' motions for summary judgment were fully briefed and filed prior to the Supreme Court's April 28, 2022 opinion in *Cummings*.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 151029
Only the Westlaw citation
is currently available.
United States District Court,
N.D. New York.

Rudoph M. BRUCE, II, on behalf of
himself and his son, T.R.B., Plaintiff,
v.
TOMPKINS CNTY. DEP'T OF SOC.
SERVS., through Kit KEPHART,
Cmm'r; Jennifer M. Donlan, Esq.; and
Patricia A. Carey, Comm'r, Tompkins
Cnty. Dep't of Soc. Servs., Defendants.

No. 5:14–CV–0941 (GTS/DEP).
|
Signed Jan. 7, 2015.

**Attorneys and Law Firms**

Rudolph M. Bruce, II, Newfield, NY, pro se.

### *DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se*
civil rights action filed by Rudolph M. Bruce,
II, on behalf of himself and his son T.R.B.
("Plaintiff") against the above-captioned
county and two individuals ("Defendants")
arising from a currently pending proceeding in
Tompkins County Family Court, are (1) United
States Magistrate Judge David E. Peebles'
Report–Recommendation recommending that
Plaintiff's Complaint be dismissed without
leave to replead and without prejudice pursuant
to the *Younger* doctrine, and (2) Plaintiff's two-

page Objection, which fails to contain a specific
challenge to the Report–Recommendation.
(Dkt.Nos .4, 5.) After carefully reviewing the
relevant filings in this action, the Court can find
no clear error in the Report–Recommendation:
Magistrate Judge Peebles employed the correct
legal standards, accurately recited the facts,
and reasonably applied the law to those facts.
As a result, the Court accepts and adopts the
Report–Recommendation for the reasons stated
therein. (Dkt. No. 4.) The Court would add
only that Magistrate Judge Peebles' thorough
Report–Recommendation would survive even
a *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles'
Report–Recommendation (Dkt. No. 4) is
***ACCEPTED*** and ***ADOPTED*** in its entirety;
and it is further

**ORDERED** that Plaintiff's Complaint (Dkt.
No. 1) is ***DISMISSED*** without leave to replead
and without prejudice.

The Court hereby certifies, for purposes of
⚑ 28 U.S.C. § 1915(a) (3), that any appeal
taken from the Court's final judgment in this
action would not be taken in good faith.

### *REPORT, RECOMMENDATION,*
### *AND ORDER*

DAVID E. PEEBLES, United States Magistrate
Judge.

*Pro se* plaintiff Rudolph M. Bruce, II,
purporting to act on behalf of himself and

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

Case 8:24-cv-00027-BKS-DJS Document 14 Filed 02/29/24 Page 60 of 64

2015 WL 151029

his son, T.R.B., has commenced this action against Tompkins County Department of Social Services ("DSS") and two individuals, pursuant to 🚩 42 U.S.C. § 1983, alleging that the defendants have deprived him and his son of their civil rights. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for consideration. For the reasons set forth below, I recommend that plaintiff's complaint be dismissed without leave to replead.

## I. *BACKGROUND*

This action was commenced on July 28, 2014. Dkt. No. 1. Plaintiff's complaint asserts claims on his behalf and on behalf of his son, T.R.B., and names Tompkins County DSS, Kit Kephart, Jennifer M. Donlan, Esq., and Patricia A. Carey as defendants. *Id* . at 1–2. Plaintiff's complaint is accompanied by an application for leave to proceed IFP. Dkt. No. 2.

In his complaint, plaintiff alleges that his son's First Amendment right of free speech was infringed by the defendants, who apparently took custody of T.R.B. and his siblings [1] on or about June 17, 2014, based upon T.R.B.'s statement that "he would rather be dead if he could not be with his family." [2] Dkt. No. 1 at 5. The complaint suggests that, prior to taking custody of T.R.B. and his siblings, Tompkins County DSS investigated a complaint of alleged child neglect, and proceedings before Honorable Joseph R. Cassidy, a Tompkins County Family Court Judge, have commenced regarding the custody of the children. *Id.* at 6.

**\*2** Liberally construed, plaintiff's complaint alleges that defendants have deprived him

of his right to custody of his children under the First, Fourth, Fifth, and Fourteenth Amendments, and have deprived T.R.B. of his First Amendment right to free speech. *See generally* Dkt. No. 1. As relief, plaintiff seeks (1) return of his children to his custody and (2) Judge Cassidy's recusal from the pending family court matter in Tompkins County or removal of the matter to Broome County. *Id.* at 4, 7.

## II. *DISCUSSION*

### A. *Application to Proceed IFP*
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 🚩 28 U.S.C. § 1915(a)(1). [3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted. [4]

### B. *Sufficiency of Plaintiff's Claims*

#### 1. *Standard of Review*
Because I have granted plaintiff's motion to proceed *in forma pauperis,* I must review the sufficiency of the claims set forth in his complaint in light of 🚩 28 U.S.C. § 1915(e). 🚩 Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against

Bruce v. Tomkins County Dept. of Social Services ex rel...., Not Reported in...
Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 61 of 64
2015 WL 151029

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the

purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R .D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus,

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 62 of 64

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

2015 WL 151029

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

### 2. *Analysis of Plaintiff's Claims*
It is clear from plaintiff's complaint that the claims asserted on his behalf and on behalf of T.R.B. directly relate to a pending proceeding before Judge Cassidy in Tompkins County Family Court regarding the custody of T.R.B. and his siblings. Dkt. No. 1 at 6. Pursuant to *Younger v. Harris,* 401 U.S. 37, 43–45 (1971), and its progeny, however, a federal district court does not have jurisdiction over an action seeking injunctive or declaratory relief "where '1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in state court.' " *Parent v. N.Y.,* 485 F. App'x 500, 503 (2d Cir.2012) (quoting *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 647 (2d Cir.2009)). The *Younger* doctrine "applies with equal force to [both criminal and] civil proceedings," including proceedings pending in family courts. *Parent,* 485 F. A'ppx at 503; *Donkor v. City of N.Y. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224 (S.D.N.Y.1987).

**\*4** In this case, it is clear from plaintiff's complaint that the three conditions necessary to establish *Younger* abstention are satisfied. First, as discussed above, there is an ongoing proceeding in Tompkins County Family Court concerning plaintiff and the custody of his children. Dkt. No. 1 at 6. Second, "[a] state plainly has an interest in the outcome of a child custody dispute adjudicated in its courts." *Grieve v. Tamerin,* 269 F.3d 149, 152–53 (2d Cir.2001). Turning to the third condition, "the relevant question under *Younger* is whether the state's procedural remedies could provide the relief sought not whether the state will provide the constitutional ruling which the plaintiff seeks." *Spargo v. N.Y. State Comm'n of Judicial Conduct,* 351 F.3d 65, 79 (2d Cir.2003) (quotation marks, alterations, emphasis omitted). Courts in this circuit have frequently concluded that a pending proceeding in state family court "affords ... adequate opportunity for judicial review of [a plaintiff's] constitutional claims." *Best v. City of N.Y.,* No. 12–CV–7874, 2014 WL 163899, at \*10 (S.D.N.Y. Jan. 15, 2014); *see also Hidalgo v. N.Y.,* 11–CV–5074, 2011 WL 5838494, at \*3 (E.D.N.Y.21, 2011); *Reinhardt v. Mass. Dep't of Soc. Servs.,* 715 F.Supp. 1253, 1257 (S.D.N.Y.1989).

Based upon the foregoing, I recommend that the court abstain from addressing any of the claims asserted in the plaintiff's complaint, all of which relate directly to the proceeding pending in Tompkins County Family Court.

### C. *Whether to Permit Amendment*
Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice

Case 8:24-cv-00027-BKS-DJS   Document 14   Filed 02/29/24   Page 63 of 64

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

2015 WL 151029

so requires."); *see also* 🚩 *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🚩 *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also* 🚩 *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." 🚩 *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*5** In this case, the court is precluded from adjudicating the claims asserted in plaintiff's complaint on his behalf and on behalf of T.R .B. due to the pending proceeding in Tompkins County Family Court, and no amendment to the complaint could cure this defect. Accordingly, I recommend that plaintiff not be granted leave to replead. [5]

III. *SUMMARU AND RECOMMENDATION*
A review of plaintiff's application for leave to proceed IFP reflects that he is eligible for that status. Because all of plaintiff's claims asserted both on his behalf and on behalf of T.R.B. relate to an ongoing proceeding in Tompkins County Family Court, however, I recommend that the court abstain from adjudicating any of them. Based upon the foregoing, it is hereby

ORDERED that plaintiff's leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint be DISMISSED without leave to replead and without prejudice.

NOTICE: Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 🚩 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; 🚩 *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Sept. 4, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 151029

Bruce v. Tompkins County Dept. of Social Services ex rel...., Not Reported in...

2015 WL 151029

# Footnotes

1    Plaintiff's complaint alludes to T.R.B.'s brother and sister, and plaintiff's IFP application indicates that plaintiff has three children. Dkt. No. 1 at 5; Dkt. No. 2 at 2.

2    Plaintiff's complaint does not disclose the age of T.R.B. Dkt. No. 1.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of N.Y.,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

4    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5    It is worth noting that plaintiff is precluded from pursuing claims on behalf of his son, T.R.B., *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see also Fauconier v. Comm. on Special Educ.,* No. 02–CV–1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003). In the event my recommendation that plaintiff's complaint be dismissed without leave to replead is not adopted by the district judge, and any of the claims asserted on behalf of T.R.B. survive, plaintiff must first obtain legal representation to pursue those claims.

In addition, because Tompkins County DSS is not amenable to suit, *Hoisington v. Cnty. of Sullivan,* 55 F.Supp.2d 212, 214 (S.D.N.Y.1999), in the event any portion of the plaintiff's complaint survives review by the district judge, I recommend that Tompkins County be substituted as a defendant in the place of Tompkins County DSS.